# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

HYC LOGISTICS INC,
    *Plaintiff/Counter-Defendant*

ITAMAR ARONOV, URI SILVER,
562 EXPRESS, INC., ANTONIO
HERNANDEZ, and DAYANA DIAZ,
    *Counter-Defendants*

vs.

OJCOMMERCE, LLC,
    *Defendant/Counter-Plaintiff*

    and

JACOB WEISS,
    *Defendant.*

_____/

Case No. 2:23-cv-02050-TLP-tmp

**JURY TRIAL DEMANDED**

---

**DEFENDANT/COUNTER-PLAINTIFF OJ COMMERCE, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AGAINST HYC LOGISTICS, INC., ITAMAR ARONOV, URI SILVER, 562 EXPRESS, INC., ANTONIO HERNANDEZ, AND DAYANA DIAZ**

Defendant OJ Commerce, LLC ("OJC"), by and through the undersigned counsel, hereby respectfully files this Answer and Affirmative Defenses to Plaintiff's Complaint.

## ANSWER

OJC denies each and every allegation contained in Plaintiff's Complaint that is not specifically admitted in this Answer. Subject to the foregoing, OJC hereby Answers Plaintiff's Complaint as follows:

1.    OJC denies the allegations contained in Plaintiff's purported "Statement of the Case," and in paragraphs 5, 12, 13, 14, 15, 16, 17, 18, 21, 24, 25, 27, 36, 38, 40, 42, 43, 45, 46, 47, 48, 52, 53, 54, 55, 57, 58, 59, 60, 67, 71, 72, 73, 74, 75, 76, 77, 78, 83, 84, 85, 86, 88, 89, 90, 91,

1

92, 93, 96, 98, 99, 100, 101, 102, 103, 105, 106, 107, 108, 109, 110, 111, 112, 114, 115, 116, 120, 121, 130, 132, 133, 134, 136, 137, 138, 139, 140, 141, 152, 153, 154, 156, 157, 159, 160, 161, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 175, 176, 177, 178, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 197, 198, 199, 200, 201, 202, 204, and 205.

2.      OJC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraphs 1, 4, 6, 7, 11, 22, 23, 26, 28, 29, 30, 31, 32, 33, 34, 35, 37, 39, 41, 49, 50, 51, 56, 61, 62, 63, 64, 65, 66, 68, 79, 80, 81, 82, 87, 95, 97, 113, 118, 119, 122, 123, 124. 125, 126, 127, 128, 129, 131, 135, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 155, 158, 173, and 174, and therefore denies the same.

3.      OJC admits that Defendant OJ Commerce, LLC is a for profit limited liability company organized under the laws of the State of Delaware with its principal office located at 3076 North Commerce Parkway, Miramar, Florida 33025, that OJ Commerce, LLC's sole member is a citizen of the State of Florida, and that no member of OJ Commerce, LLC is a citizen of the State of Tennessee.  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 2, and therefore denies the same.

4.      OJC admits that Jacob Weiss ("Weiss") is the President, CEO, and Manager of OJ Commerce, LLC and that he is a citizen of the State of Florida. OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 3, and therefore denies the same.

5.      OJC admits that the quote in paragraph 8 appears on www.ojcommerce.com.  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 8, and therefore denies the same.

6.      OJC admits the averment in paragraph 9 of Plaintiff's Complaint.

7.      OJC admits that Weiss owns OJC.  OJC denies that Weiss resides in Broward County, Florida.  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 10, and therefore denies the same.

8.      OJC denies the allegations in paragraphs 19 and 20, and affirmatively states that Plaintiff made demonstratively false statements in those paragraphs, as shown by the fact that (i) Weiss has no cases pending against him, (ii) none of the 22 cases listed by Plaintiff in footnotes 3-4 even included Weiss as a party, (iii) only two cases are pending out of the 22 Plaintiff cites, (iv) of the 22 cases Plaintiff listed, 19 of them were dismissed before the dispute between Plaintiff and OJC even took place, (v) some of the 22 cases that Plaintiff characterizes as "third parties seeking to recover money results from Defendants' nonpayment of service contracts" did not contain any such claims, but were rather landlord, trademark, or patent related, and (vi) the 22 cases listed by Plaintiff spanned nine years, with the first one being filed nine years ago and first one being dismissed seven years ago.

9.      OJC admits that at 11:59 AM on December 13, 2022, OJC sent an email directing Plaintiff to, *inter alia*, "cancel all pick-up appointments scheduled."  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 69, and therefore denies the same.

10.     OJC admits that OJC sent an email, *inter alia*, directing Plaintiff to "cancel all open appointments and confirm so we can rebook."  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 70, and therefore denies the same.

11.     OJC admits that the purported Contract was terminated and canceled on December 13, 2022.  OJC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 104, and therefore denies the same.

12.     OJC repeats and realleges its responses in paragraphs 94, 117, 162, 179, 196, 203,

13.     OJC denies that Plaintiff is entitled to any of the remedies Plaintiff seeks in its Prayers for Relief.

## AFFIRMATIVE DEFENSES

1.     OJC is not properly the subject of personal jurisdiction in this District as outlined in detail in its motion to dismiss.

2.     Venue is not proper over OJC in this District as outlined in detail in its motion to dismiss.

3.     Plaintiff's claims are barred in whole or in part because of unclean hands because of Plaintiff's overcharging OJC, refusing to cancel future pick-up appointments even after OJC instructed Plaintiff to do so, and/or stealing OJC's containers.

4.     Plaintiff's claims are barred in whole or in part because of waiver and failure of consideration because, upon information and belief, OJC paid all undisputed amounts due to Plaintiff, and because of Plaintiff's overcharging OJC, refusing to cancel future pick-up appointments even after OJC instructed Plaintiff to do so, and/or stealing OJC's containers.

5.     Plaintiff's claims are barred in whole or in part due to payment and release because OJC paid all undisputed amounts due to Plaintiff.

6.     Plaintiff's claims are barred in whole or in part by Plaintiff's prior breach of contract due to Plaintiff's overcharging OJC, refusing to cancel future pick-up appointments even

after OJC instructed Plaintiff to do so, and/or stealing OJC's containers.

7.      Plaintiff's claims are barred in whole or in part by Plaintiff's failure to mitigate its damages, if any, by purportedly continuing to incur "damages" even after the purported Contract identified in Plaintiff's Complaint was terminated and canceled.

8.      Plaintiff's claims are barred in whole or in part by Plaintiff's negligence.

9.      Plaintiff's claims are barred in whole or in part by Plaintiff's fraud because of Plaintiff's overcharging OJC, refusing to cancel future pick-up appointments even after OJC instructed Plaintiff to do so, and/or stealing OJC's containers.

10.     OJC's alleged acts or omissions were not the direct and/or proximate cause of Plaintiff's damages.

11.     Any damages that Plaintiff allegedly suffered were directly or proximately caused by unforeseeable, independent, intervening, and/or superseding acts beyond the control of and unrelated to any alleged actions or omissions by OJC, including but not limited to the actions and omissions of Plaintiff.

14.     OJC reserves the right to assert additional defenses based on information learned during discovery.


**OJC'S COUNTERCLAIMS AGAINST HYC LOGISTICS, INC., ITAMAR ARONOV, URI SILVER, 562 EXPRESS, INC., ANTONIO HERNANDEZ, AND DAYANA DIAZ**

OJ Commerce, LLC ("OJC"), by and through undersigned counsel, hereby brings, pursuant to Fed. R. Civ. P. 13 and 20, these counterclaims against Plaintiff HYC Logistics, Inc., Itamar Aronov, Uri Silver, 562 Express, Inc., Antonio Hernandez, and Dayana Diaz (collectively, "Counter-Defendants"), and states and alleges the following:

**PARTIES**

1.      OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and sells consumer goods to customers.  OJC is a citizen of the State of Florida.

2.      HYC Logistics, Inc. ("HYC") is a corporation that has its principal place of business in the State of New Jersey.  Upon information and belief, HYC is not a Florida corporation.

3.      Upon information and belief, Itamar Aronov is and was during the relevant time VP Sales and a representative of HYC and is a citizen of the State of New Jersey.  Itamar Aronov is subject to personal jurisdiction in this District, because HYC has argued that as a "principal and/or agent and/or representative of [HYC], [he] 'irrevocably consent[s] to the jurisdiction of the United States District Court and the State courts of Tennessee" and further agree[s] that "any action relating to the services performed by Company shall only be brought in said courts." – referencing the court in Tennessee. (See, Contract ¶23(b))."  (ECF 24, p. 12 of 21.)  HYC has also argued that the claims in this case relate to the relationship between HYC and OJC.  (*Id.*)

4.      Upon information and belief, Uri Silver is and was during the relevant time the President and a representative of HYC and is a citizen of Israel.  Uri Silver is subject to personal jurisdiction in this District, because HYC has argued that as a "principal and/or agent and/or representative of [HYC], [he] 'irrevocably consent[s] to the jurisdiction of the United States District Court and the State courts of Tennessee" and further agree[s] that "any action relating to the services performed by Company shall only be brought in said courts." – referencing the court in Tennessee. (See, Contract ¶23(b))."  (ECF 24, p. 12 of 21.)  HYC has also argued that the

claims in this case relate to the relationship between HYC and OJC.  (*Id.*)

5.      Upon information and belief, 562 Express, Inc. ("562") is a California corporation, with its principal place of business in Long Beach, California, and is a trucking company.  562 is a citizen of the State of California.  OJC has asserted claims for Conversion, Civil Theft, and Intentional Interference with Economic Advantage against 562 in this Court in Case No. 2:23-cv-02226-TLP-atc (W.D. Tenn.), which has been consolidated with this case. (*See* ECF 32.)  562 is subject to personal jurisdiction in this District, because it willingly had moved its consolidated case to this District.

6.      Upon information and belief, Antonio Hernandez is and was during the relevant time the Vice President and a representative of 562 and is a citizen of the State of California. Antonio Hernandez is subject to personal jurisdiction in this District, because 562 argued in moving to transfer OJC's claims against it to this District that the "that Contract [at issue] expressly includes HYC and any agent of HYC [562]" or representatives, and the claims in the consolidated cases relate to the relationship between the HYC and OJC.  (*See* ECF 36-1, p. 11 of 19.)

7.      Upon information and belief, Dayana Diaz is and was during the relevant time a Dispatcher and representative of 562 and is a citizen of the State of California. Dayana Diaz is subject to personal jurisdiction in this District, because 562 argued in moving to transfer OJC's claims against it to this District that the "that Contract [at issue] expressly includes HYC and any agent of HYC [562]" or representatives, and the claims in the consolidated cases relate to the relationship between the HYC and OJC.  (*See* ECF 36-1, p. 11 of 19.)

8.      Venue is proper is this District as to the Counter-Defendants because 562, HYC, and the related individuals that are the counter-defendants to the claims at issue in the

consolidated cases, have explicitly chosen this District in which to litigate their claims and defenses against OJC.

9.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.  This Court also has supplemental jurisdiction over these counterclaims, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the alleged claims in HYC's Complaint.

## INTRODUCTION

10.     In August 2022, OJC and HYC (collectively, "the Parties") agreed to pricing terms for HYC's logistical services related to the shipment of OJC's international shipping containers.  Under that agreement, HYC was to act as an agent for OJC in the shipment of its containers, specifically HYC was to pick up OJC's containers at the port and deliver them to OJC's 3PL warehouse.

11.     From the very first container to the last, HYC consistently overcharged OJC and never honored the pricing agreement that the Parties had made.  Indeed, HYC, Uri Silver, and Itamar Aronov fraudulently induced OJC into an agreement for HYC's services under specific pricing terms, knowing that HYC had no intention of ever honoring those agreed-upon prices.

12.     After a relatively short amount of time of HYC's overcharges, and attempting to correct them to no avail, OJC terminated its agency relationship with HYC on December 13, 2022.

13.     Instead of immediately stopping all agent activities for OJC, HYC, Itamar Aronov, Uri Silver, 562 Express, Inc., Antonio Hernandez, and Dayana Diaz conspired to steal containers belonging to OJC and hold them for ransom in an effort to extort OJC into paying

HYC for its fraudulent overcharges.

14.     To that end, between December 13-14, 2022, HYC willfully and maliciously directed its agent 562 Express, Inc. ("562") to steal nine (9) of OJC's shipping containers full of products that were intended for OJC's customers during the holiday season. As a result, OJC was massively harmed and lost sales when its customers were unable to purchase their holiday items from OJC.  Despite being repeatedly informed that they had no right to steal, possess, or retain OJC's containers or their contents, HYC, and 562, have illegally converted the contents of OJC's containers with the intent to cause OJC injury and to extort OJC into paying HYC's overcharges on the services it did provide OJC. OJC files this Complaint to remedy this grave injustice.

### FACTS COMMON TO ALL COUNTS

15.     OJC is an online retailer who sells a variety of products online within the continental United States.

16.     OJC also imports products via ocean freight containers from Asia, for those products to be sold within the continental United States.

17.     OJC hired HYC for the delivery of some of OJC's shipping containers from the ports of California, to warehouses in California.

18.     As part of that arrangement, the Parties signed a service contract on August 15, 2022 ("Service Contract"), wherein HYC was identified as an "agent" of OJC.  A true and correct copy of the Service Contract is hereby attached as **Exhibit A**.  The Parties also agreed on pricing terms for HYC's services outlined in the Service Contract as part of their communications during August 2022.

19.     Throughout the course of the Parties' business relationship, every invoice that HYC submitted to OJC contained overcharges far above what the Parties had agreed to for

HYC's logistical services.

20.     OJC communicated its dissatisfaction with HYC's overcharges on multiple

occasions, yet HYC continued to overcharge OJC.

21.     In December 2022, OJC imported four (4) containers to the APM Terminals in

Los Angeles California, which were identified by container Nos. GLDU7208342,

MSMU5351302, FSCU8375189, FSCU6621030 (collectively, the "APM Containers").

22.     In December 2022, OJC also imported five (5) containers to the PCT Terminals in

Long Beach California, which were identified as container Nos. FBLU0221540, UETU5851068,

WHSU5838796, WHSU6872630, WHSU6598895 (collectively, the "PCT Containers").

23.     The PCT Containers and the APM Containers are collectively referred to as "the

Containers," and they contained products that OJC had imported for sale in the United States.

True and correct copies of the bills of lading for all the Containers are hereby attached as

**Exhibit B**.

24.     Upon information and belief, 562 is a trucking company that is engaged in the

business of picking up containers from terminals to be transported to warehouses.

25.     On December 13, 2022, 562, at HYC's direction, picked up from the APM

Terminals container No. FSCU6621030, and 562, at HYC's direction, picked up from the PCT

Terminals container Nos. FBLU0221540 and UETU5851068; and on December 14, 562, at

HYC's direction, picked up from the APM Terminals container Nos. GLDU7208342,

MSMU5351302, and FSCU8375189, and 562, at HYC's direction, picked up from the PCT

Terminals container Nos. WHSU5838796, WHSU6872630, WHSU6598895.

26.     It was clear that the HYC and 562 had no intention of delivering the Containers

to their intended destination, but rather, that HYC and 562 sought to deprive OJC of the

Containers' use and hold them as ransom to coerce OJC into paying unauthorized overcharges claimed by HYC.

27.     Listed below is the timeline showing HYC's and 562's willful theft of the Containers **after** the cancellation of any alleged authority that HYC or 562 had to pick up or transport the Containers:

- **December 13, 2022**:

  - 11:59 AM:[1] OJC demands that HYC cancel all appointments to pick up Plaintiffs' shipping containers.

  - 12:23 PM: After receiving no response to its 11:59 AM email, OJC reiterates its prior request that HYC "cancel ALL pending appointments."

  - 4:00 PM: After **four hours** without a response or confirmation of its cancellation demands, OJC again demands that HYC confirm that all appointments are canceled so that OJC can secure its own appointments.

  - 5:53 PM: After nearly **six hours** without a response from HYC, OJC advises HYC again that it is "not to pick up any containers from OJCommerce at any port or terminal" and reiterates that "[a]ny authority previously given for such pickups, is hereby revoked."

  - 5:55 PM:  **Six hours** after OJC first demanded that all appointments to pick up its Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's first shipping container, Container No. FBLU0221540.

  - 6:12 PM: 562 picked up and stole, at HYC's direction, Plaintiff's Container No. UETU5851068.

  - 11:08 PM: **Eleven hours** after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. FSCU6621030.

- **December 14, 2022**:

  - 3:36 AM:  **Fifteen-and-a-half hours** after OJC first demanded that all appointments to pick up THE Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. GLDU7208342.

---

[1] All times listed are Eastern time zone, where OJC is located.  The times received from the Terminals for the illegal pickups by 562 were in local, Pacific time and have been converted to Eastern for ease of reference.

- o 4:03 PM: *28 hours* after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. WHSU5838796.

- o 4:38 PM:  After over *28.5 hours* without a response from HYC, OJC reiterated again its termination and noted that "YOU [AR]E COMPLETELY IGNORING and not responding" to OJC's prior emails.  This time, OJC also copied 562 on the email chain.

- o 5:55 PM: *30 hours* after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. MSMU5351302.

- o 7:03 PM:  *31 hours* after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. WHSU6598895.

- o 7:40 PM: Nearly *32 hours* after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. FSCU8375189.

- o 10:11 PM:  Over *34 hours* after OJC first demanded that all appointments to pick up the Containers be canceled, 562 picked up and stole, at HYC's direction, OJC's Container No. WHSU6872630.

28.     During these two days, HYC and 562 refused to communicate with OJC, and they never responded to any of OJC's emails.

29.     Instead, as shown above, HYC, through its direction of 562, stole *nine* of OJC's Containers *after* all alleged authority to do so was clearly revoked.

30.     Neither HYC nor 562 had any authorization from OJC to pick up any of the Containers, to retain the Containers, or to retain the contents of the Containers.

31.     To the contrary, on December 13, 2022, OJC revoked any alleged authority for HYC and 562 to act on OJC's behalf.

32.     On December 15, 2022, OJC sent a letter informing HYC and 562 that they had no authorization to pick up any of the Containers and demanded their immediate return. A true

and correct copy of the demand letter is hereby attached as **Exhibit C** (the "Demand Letter").

33.    In its Demand Letter, OJC advised Defendant that the Containers contain holiday products, and OJC's customers are waiting for their delivery.

34.    Presently, HYC and/or 562 are still holding the Containers and their contents in their possession, custody, or control.

35.    HYC refuses to return the Containers or their contents to OJC.

36.    A true and correct copy of a schedule of the contents of the Containers, and their values totaling $663,952.71, is hereby attached as **Exhibit D**.

## COUNT I – CONVERSION
### Against HYC

37.    OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

38.    OJC is the legal and rightful owner of the Containers and their contents.

39.    HYC is holding the Containers and their contents in its possession, custody, or control, and refuses to release the Containers and their contents to OJC.

40.    HYC's exercise of control on the Containers and their contents is inconsistent with OJC's rights to the Containers and their contents.

41.    As a result of HYC's wrongful action, OJC incurred damages, including the value of the contents of the Containers, incidental damages related to the storage and moving of the Containers, cancellation fees, customer service accommodations, damages related to loss of goodwill and reputation, and lost sales of the items that were in the Containers.

42.    Despite knowing that it has no right to retain the Containers and their contents, and that OJC's customers are waiting for the delivery of the products contained in the

Containers, HYC continues to retain OJC's property against its will. HYC's conversion of OJC's property has been and is being done with malice, whereby HYC has intended and is intending to cause injury to OJC, and HYC has willfully and consciously disregarded OJC's rights to its property. By its conduct, HYC has also caused OJC oppression, as HYC has cruelly and unjustly robbed OJC of its property rights in the Containers and their contents. Accordingly, OJC is entitled to punitive damages from HYC for its conversion of the Containers and their contents.

WHEREFORE, OJC seeks monetary damages, in the form of reimbursements for value of the content for the Containers, in a sum no less than $663,952.71; lost sales, costs of this action, incidental damages, punitive damages for HYC's malicious and oppressive conduct in an amount to be determined at trial but no less than $1,327,905.42, and any other relief this Court finds just and proper.

## COUNT II – CIVIL THEFT
### Against HYC

43.     OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

44.     HYC's theft of the Containers was done after the agency relationship between the Parties was terminated.

45.     Accordingly, neither HYC nor 562 (HYC's agent) had authority to pick up the Containers on December 13-14, 2022, and the terms of the Service Contract did not govern and could not justify HYC's and 562's theft of the Containers.

46.     The theft of the Containers was also not a "service performed" by HYC or 562 for OJC and was in fact done in complete disregard of OJC's wishes.  Therefore, the terms of Service Contract did not apply to the HYC's theft of the Containers.

14

47.     This cause of action arises out of Cal. Penal Code § 496(c) that provides a remedy for any person that has been injured as a result of knowingly withholding any property from its owner.

48.     HYC, through its agent 562, withheld the Containers and their contents and refused to return them to OJC.

49.     HYC knew that it had no authorization to pick up, or direct the pick up of, the Containers in the first place, and none to retain the Containers and their contents.

50.     As a result of HYC's theft of the Containers, OJC incurred damages.

51.     Despite knowing that it has no right to retain the Containers and their contents, and that OJC's customers are waiting for the delivery of the products contained in the Containers, HYC continues to retain OJC's property against its will. HYC's theft of OJC's property has been and is being done with malice, whereby HYC has intended and is intending to cause injury to OJC, and HYC has willfully and consciously disregarded OJC's rights to its property. By its conduct, HYC has also caused OJC oppression, as HYC has cruelly and unjustly robbed HYC of its property rights in the Containers and their contents. Accordingly, OJC is entitled to treble and punitive damages from HYC for its theft of the Containers and their contents.

WHEREFORE, OJC seeks monetary damages, in a sum no less than $663,952.71; consequential damages, punitive damages, treble damages, and reasonable attorney's fees pursuant to Cal. Penal Code § 496(c), in an amount to be determined at trial but no less than $1,991,858.13, together with court costs, interest, and any other relief this Court deems just and proper.

## COUNT III - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### Against HYC

52.     OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

53.     OJC had an existing business relationship with its retail customers, who purchased or intended to purchase the products that were included in the Containers.

54.     HYC was aware of that business relationship.  Indeed, OJC even informed HYC in the Demand Letter that its "customers are being denied their holiday gifts and not receiving them" as a result of HYC's wrongful actions.

55.     HYC intended to and did, through improper motive and improper means, intentionally interfere, breach, or terminate that business relationship, by taking possession of and retaining the Containers and their contents against OJC's will, without OJC's authorization, or any justification, and thus making it impossible for OJC to deliver those products contained in the Containers to OJC's retail customers.

56.     As a result of HYC's wrongful actions, OJC was injured in the form of lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

57.     Despite knowing that it has no right to retain the Containers and their contents, and that OJC's customers are waiting for the delivery of the products contained in those Containers, HYC continues to retain OJC's property against its will. HYC's interference with OJC's economic advantage has been and is being done with malice, whereby HYC has intended and is intending to cause injury to OJC, and HYC has willfully and consciously disregarded OJC's rights to its economic advantage. By its conduct, HYC has also caused OJC oppression, as HYC has cruelly and unjustly robbed OJC of its economic advantage that would result from the

Containers and their contents. Accordingly, OJC is entitled to punitive damages from HYC for its intentional interference.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

### COUNT IV – COMMON LAW INDUCEMENT OF BREACH OF CONTRACTS
### Against HYC and 562

58.    OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

59.    OJC had existing legal contracts with its retail customers, who had purchased the products that were included in the Containers.

60.    HYC and 562 had knowledge of OJC's contracts with its customers.  Indeed, OJC informed HYC and 562 in the Demand Letter that its "customers are being denied their holiday gifts and not receiving them" as a result of HYC's wrongful actions.

61.    HYC and 562 intended to and did, through improper motive and improper means, maliciously induced the breach of OJC's contracts with its customers, by taking possession of and retaining the Containers and their contents against OJC's will, without OJC's authorization, or any justification, and thus making it impossible for OJC to deliver those products contained in the Containers to OJC's retail customers.

62.    Indeed, HYC and 562 malicious inducement did in fact result in breaches of contracts between OJC and its customers.

63.    As a result of HYC and 562's wrongful actions, OJC was damaged in the form of

lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

64.     Despite knowing that it has no right to retain the Containers and their contents, and that OJC's customers are waiting for the delivery of the products contained in those Containers, HYC and 562 continues to retain OJC's property against its will. HYC and 562's inducement of the breach of contracts has been and is being done with malice, whereby HYC and 562 have intended and is intending to cause injury to OJC, and HYC and 562 have willfully and consciously disregarded OJC's rights to its economic advantage. By their conduct, HYC and 562 have also caused OJC oppression, as HYC and 562 has cruelly and unjustly robbed OJC of its economic advantage that would result from the Containers and their contents. Accordingly, OJC is entitled to punitive damages from HYC and 562 for their intentional inducement.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

### COUNT V – PROCUREMENT OF BREACH OF CONTRACTS – Tenn.Code § 47-50-109 Against HYC and 562

65.     OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

66.     OJC had existing legal contracts with its retail customers, who had purchased the products that were included in the Containers.

67.     HYC and 562 had knowledge of OJC's contracts with its customers.  Indeed, OJC informed HYC and 562 in the Demand Letter that its "customers are being denied their holiday

gifts and not receiving them" as a result of HYC's wrongful actions.

68.    HYC and 562 intended to and did, through improper motive and improper means, intentionally induce the breach of OJC's contracts with its customers, by taking possession of and retaining the Containers and their contents against OJC's will, without OJC's authorization, or any justification, and thus making it impossible for OJC to deliver those products contained in the Containers to OJC's retail customers.

69.    Indeed, HYC and 562 malicious inducement did in fact result in breaches of contracts between OJC and its customers.

70.    As a result of HYC and 562's wrongful actions, OJC was damaged in the form of lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

71.    Despite knowing that it has no right to retain the Containers and their contents, and that OJC's customers are waiting for the delivery of the products contained in those Containers, HYC and 562 continues to retain OJC's property against its will. HYC and 562's inducement of the breach of contracts has been and is being done with malice, whereby HYC and 562 have intended and is intending to cause injury to OJC, and HYC and 562 have willfully and consciously disregarded OJC's rights to its economic advantage. By their conduct, HYC and 562 have also caused OJC oppression, as HYC and 562 has cruelly and unjustly robbed OJC of its economic advantage that would result from the Containers and their contents. Accordingly, OJC is entitled to punitive damages from HYC and 562 for their intentional inducement.

WHEREFORE, pursuant to Tenn.Code § 47-50-109, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, treble damages, in an amount to be determined at trial but no less than $1,991,858.13, costs of this litigation, its

attorneys' fees, prejudgement interest, and any other relief this Court finds just and proper.

## COUNT VI – DECEPTIVE TRADE PRACTICES
### Against HYC and 562

72.     OJC repeats and realleges, as if fully set forth herein, each and every allegation

contained in the preceding paragraphs of this Counterclaims.

73.     This action is brought pursuant to Tenn.Code Ann. § 47–18–109(a)[2], also known

as the Tennessee Consumer Protection Act of 1977, which provides a private cause of action for

an unfair or deceptive trade practice.

74.     HYC and 562 committed deceptive trade practices, by deceiving the port

authorities that they were authorized agents and had permission from OJC to pick up the

Containers.

75.     HYC and 562 further committed unfair trade practices, by holding the Containers

for ransom, in order to leverage payment from OJC in an unrelated dispute over prior shipments.

76.     As a result of HYC and 562's unfair and deceptive trade practices, OJC was

robbed of the Containers and their contents and suffered damages as a result.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than

$663,952.71, incidental damages, treble damages pursuant to Tenn.Code Ann. § 47–18–

109(a)(4), in an amount to be determined at trial but no less than $1,991,858.13, costs of this

litigation including reasonable attorney's fees pursuant to Tenn.Code Ann. § 47–18–109(e)(1),

prejudgement interest, and any other relief this Court finds just and proper.

---

[2] *See ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 630 (Tenn. 2000) ("corporations have
standing to bring a private cause of action for treble damages under Tenn.Code Ann. § 47–18–
109(a)").

**COUNT VII – AIDING AND ABETTING IN HYC'S CONVERSION, CIVIL THEFT, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, DECEPTIVE TRADE PRACTICES, COMMON LAW INDUCEMENT OF BREACH OF CONTRACTS, AND PROCUREMENT OF BREACH OF CONTRACTS**
**Against Itamar Aronov, Uri Silver, 562, Antonio Hernandez, and Dayana Diaz**

77.     OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

78.     Each of the Counter-Defendants knew that HYC's theft of the Containers was done after the agency relationship between the Parties was terminated on December 13, 2022.

79.     Each of the Counter-Defendants knew that neither HYC nor 562 (HYC's agent) had authority to pick up the Containers on December 13-14, 2022.

80.     Despite having the above knowledge, Itamar Aronov, Uri Silver, Antonio Hernandez, and Dayana Diaz each provided substantial assistance to HYC (and 562) in ignoring OJC's termination of the agency relationship between the Parties, and the scheduling, ordering, authorizing, and covering up the thefts of the Containers by 562 and HYC.

81.     Accordingly, the Counter-Defendants, and each of them, actively participated in HYC's theft of the Containers.

82.     The Counter-Defendants, and each of them, aided and abetted in HYC's conversion, civil theft, tortious interference with business relations, deceptive trade practices, common law inducement of breach of contracts, and procurement of breach of contracts that resulted from the illegal theft.

83.     OJC was injured in the form of lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

84.     The Counter-Defendants knew that their substantial assistance and encouragement

of HYC's theft was wrong, and yet they participated in the torts anyway. Counter-Defendants' aiding and abetting of HYC's theft and wrongful retention of the Containers was and is being done with malice, whereby Counter-Defendants intended and is intending to cause injury to OJC, and Counter-Defendants have aided and abetting in the willful and conscious disregard of OJC's rights to HYC's economic advantage. Through their conduct of aiding and abetting, Counter-Defendants have also knowingly provided substantial assistance to causing OJC oppression, as HYC and Counter-Defendants have cruelly and unjustly robbed OJC of its economic advantage that would result from the Containers and their contents. Accordingly, OJC is entitled to punitive damages from Counter-Defendants from their aiding and abetting activities.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

### COUNT VIII – AIDING AND ABETTING IN 562'S CONVERSION, CIVIL THEFT, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS/INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE, DECEPTIVE TRADE PRACTICES, COMMON LAW INDUCEMENT OF BREACH OF CONTRACTS, AND PROCUREMENT OF BREACH OF CONTRACTS
### Against HYC, Itamar Aronov, Uri Silver, Antonio Hernandez, and Dayana Diaz

85. OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

86. OJC has asserted claims for Conversion, Civil Theft, and Intentional Interference with Economic Advantage against 562 in this Court in Case No. 2:23-cv-02226-TLP-atc (W.D. Tenn.), which has been consolidated with this case. (*See* ECF 32.)

87. Each of the Counter-Defendants knew that 562's theft of the Containers was done

after the agency relationship between the Parties was terminated on December 13, 2022.

88.     Each of the Counter-Defendants knew that neither HYC nor 562 (HYC's agent) had authority to pick up the Containers on December 13-14, 2022.

89.     Despite having the above knowledge, Itamar Aronov, Uri Silver, Antonio Hernandez, and Dayana Diaz each provided substantial assistance to 562 (and HYC) in ignoring OJC's termination of the agency relationship between the Parties, and the scheduling, ordering, authorizing, and covering up the thefts of the Containers by 562 and HYC.

90.     Accordingly, the Counter-Defendants, and each of them, actively participated in 562's theft of the Containers.

91.     The Counter-Defendants, and each of them, aided and abetted in 562's conversion, civil theft, tortious interference with business relations/intentional interference with economic advantage, deceptive trade practices, common law inducement of breach of contracts, and procurement of breach of contracts that resulted from the illegal theft.

92.     OJC was injured in the form of lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

93.     The Counter-Defendants knew that their substantial assistance and encouragement of 562's theft was wrong, and yet they participated in the torts anyway.  Counter-Defendants' aiding and abetting of 562's theft and wrongfully retention of the Containers was and is being done with malice, whereby Counter-Defendants intended and is intending to cause injury to OJC, and Counter-Defendants have aided and abetting in the willful and conscious disregard of OJC's rights to HYC's and 562's economic advantage. Through their conduct of aiding and abetting, Counter-Defendants have also knowingly provided substantial assistance to causing OJC

23

oppression, as HYC and Counter-Defendants have cruelly and unjustly robbed OJC of its economic advantage that would result from the Containers and their contents. Accordingly, OJC is entitled to punitive damages from Counter-Defendants from their aiding and abetting activities.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

### COUNT IX – CIVIL CONSPIRACY TO COMMIT CONVERSION, CIVIL THEFT, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, DECEPTIVE TRADE PRACTICES, COMMON LAW INDUCEMENT OF BREACH OF CONTRACTS, AND PROCUREMENT OF BREACH OF CONTRACTS
### Against HYC, Itamar Aronov, Uri Silver, 562, Antonio Hernandez, and Dayana Diaz

94.    OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

95.    Each of the Counter-Defendants knew that HYC and 562's theft of the Containers was done after the agency relationship between the Parties was terminated on December 13, 2022.

96.    Each of the Counter-Defendants knew that neither HYC nor 562 (HYC's agent) had authority to pick up the Containers on December 13-14, 2022.

97.    Despite having the above knowledge, Itamar Aronov, Uri Silver, Antonio Hernandez, and Dayana Diaz each agreed to (a) join in 562 and HYC's ignoring OJC's termination of the agency relationship between the Parties, and (b) the scheduling, ordering, authorizing, and covering up the thefts of the Containers by 562 and HYC.

24

98.     Accordingly, the Counter-Defendants, and each of them, agreed to and actively participated in 562's and HYC's illegal theft of the Containers.

99.     The Counter-Defendants, and each of them, conspired to commit the conversion, civil theft, tortious interference with business relations, deceptive trade practices, common law inducement of breach of contracts, and procurement of breach of contracts that resulted from the illegal theft.

100.    OJC was injured in the form of lost sales, harm to reputation and goodwill, and incidental costs associated with cancellations and refunds and appeasement of unsatisfied customers.

101.    The Counter-Defendants knew that their agreement to and active participation in 562's and HYC's theft was wrong, and yet they participated in the torts anyway.  Counter-Defendants' conspiracy in HYC's and 562's theft and wrongfully retention of the Containers was and is being done with malice, whereby Counter-Defendants intended and is intending to cause injury to OJC, and Counter-Defendants have willfully and consciously disregarded OJC's rights to HYC's and 562's economic advantage. Through their conspiratorial conduct, Counter-Defendants have also knowingly conspired to cause OJC oppression, as Counter-Defendants have cruelly and unjustly robbed OJC of its economic advantage that would result from the Containers and their contents. Accordingly, OJC is entitled to punitive damages from Counter-Defendants from their conspiratorial activities.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

25

## COUNT X – BREACH OF CONTRACT
### Against HYC

102.    OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

103.    In August 2022, the Parties entered into a contract under which HYC would provide logistical services to OJC for agreed-upon prices.

104.    HYC breached the Parties' contract by overcharging OJC above the prices upon which the Parties had agreed.

105.    OJC was damaged in the form of overcharges, and lost sales, in an amount to the determined at trial.

WHEREFORE, OJC demands monetary damages for overcharges, lost sales, incidental damages, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

## COUNT XI – FRAUDULENT INDUCEMENT
### Against HYC, Uri Silver, and Itamar Aronov

106.    OJC repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Counterclaims.

107.    In August 2022, the Parties entered into a contract under which HYC would provide logistical services to OJC for agreed-upon prices.

108.    During the negotiations of that contract, in August 2022, HYC, Uri Silver, and Itamar Aronov made false statements of fact to OJC about the shipping prices that HYC would charge OJC for the services rendered under the Parties' agreement.

109.    HYC, Uri Silver, and Itamar Aronov knew that the shipping prices that they had

stated as true and accurate to OJC were, in fact, false.

110.   Upon information and belief, HYC, Uri Silver, and Itamar Aronov had made false promises concerning pricing to other shippers as well, evidencing a pattern of fraudulent behavior on their part.

111.   HYC, Uri Silver, and Itamar Aronov communicated the shipping prices that they agreed to charge OJC for logistical services with an utter disregard for the truth of those prices.

112.   HYC, Uri Silver, and Itamar Aronov  intended to induce OJC to rely on the shipping prices represented by them to OJC, to induce OJC to enter into an agreement with HYC for logistics services.

113.   Without knowing of the falsity of the prices at the time, OJC relied on HYC, Uri Silver, and Itamar Aronov's false pricing statements and promises and entered into a service agreement with HYC based on the stated prices.

114.   OJC's reliance on the shipping prices that HYC, Uri Silver, and Itamar Aronov communicated to OJC was reasonable under the circumstances, and OJC had no reason to disbelieve HYC, Uri Silver, and Itamar Aronov's representations at that time.

115.   OJC was injured in the form of lost sales and overcharges.

116.   HYC, Uri Silver, and Itamar Aronov knew that their representations to OJC about shipping pricing were false, and yet they induced OJC into relying on those false prices anyway. HYC, Uri Silver, and Itamar Aronov's fraudulent inducement of OJC was done with malice, whereby they intended to cause injury to OJC, and they have willfully and consciously disregarded OJC's rights to HYC's economic advantage. Through their fraudulent conduct, HYC, Uri Silver, and Itamar Aronov have also knowingly acted to cause OJC oppression, as they have cruelly and unjustly robbed OJC of its economic advantage that would resulted had OJC

not been fraudulently induced into an agreement with HYC. Accordingly, OJC is entitled to punitive damages from HYC, Uri Silver, and Itamar Aronov for their fraudulent activities.

WHEREFORE, OJC demands monetary damages for lost sales, in a sum no less than $663,952.71, incidental damages, punitive damages, in an amount to be determined at trial but no less than $1,327,905.42, costs of this litigation, prejudgement interest, and any other relief this Court finds just and proper.

**OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, OJC respectfully demands the following relief:

a.      Judgment against HYC on all of its claims;

b.      Judgment in favor of OJC on all its affirmative defenses to HYC's claims;

c.      Judgment in favor of OJC on its claims, in an amount to be determined at trial but in a sum no less than $663,952.71;

d.      Award OJC treble damages pursuant to Tenn.Code § 47-50-109, Tenn.Code Ann. § 47–18–109(a)(4), and Cal. Penal Code § 496, in an amount to be determined at trial but no less than $1,991,858.13, and punitive damages, in an amount to be determined at trial but no less than $1,327,905.42;

e.      Award of OJC's attorneys' fees and costs, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, Cal. Penal Code § 496, Tenn.Code Ann. § 47–18–109(e)(1), Tenn.Code § 47-50-109, and other statute(s), or otherwise according to law;

f.      Pre- and post-judgment interest, as allowed by law;

g.      OJC's costs incurred in obtaining judgment against HYC; and

h.      Such other relief as the Court considers just and proper.

Dated:  September 29, 2023                    Respectfully submitted,


By: /s/ Aaron W. Davis
Aaron W. Davis
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Phone: 763-957-2397
Email: davis@valhallalegal.com

Richard Glassman (#07815)
Lauran G. Stimac (#31587)
Jonathan S. Stokes (#29416)
GLASSMAN, WYATT, TUTTLE & COX, P.C.
26 North Second Street
Memphis, TN  38103
Telephone:  (901) 527-4673
Facsimile:  (901) 521-0940
Email:  rglassman@gwtclaw.com
        lstimac@gwtclaw.com
        jstokes@gwtclaw.com

Shlomo Y. Hecht
Shlomo Y. Hecht, P.A.
3076 N Commerce Parkway
Miramar, FL 33025
Phone: 954-861-0025
Email: sam@hechtlawpa.com

*Attorneys for OJ Commerce, LLC*

**<u>CERTIFICATE OF TRANSMITTAL / SERVICE</u>**

I HEREBY certify that on September 29, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and thereby served this document upon Plaintiff's counsel of record.

/s/ Aaron W. Davis
Aaron W. Davis
