## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

---

**HYC LOGISTICS, INC.,**

       **Plaintiff/Counter-Defendant**

**vs.**

                                     **Civil Action No. 2:23-cv-02050-TLP-tmp**

**OJCOMMERCE, LLC D/B/A**
**OJ COMMERCE, LLC AND**
**JACOB WEISS, INDIVIDUALLY,**

       **Defendants/Counter-Plaintiffs**

---

**OJCOMMERCE, LLC D/B/A**
**OJ COMMERCE, LLC**

       **Defendant/Counter-Plaintiff**

**vs.**

**ITAMAR ARONOV, URI SILVER,**
**562 EXPRESS, INC., ANTONIO HERNANDEZ**
**and DAYANA DIAZ**

       **Counter-Defendants.**

---

**OJ COMMERCE, LLC,**

       **Plaintiff**

**vs.**                                  **Civil Action No. 2:23-cv-02226-TLP-atc**
                                         **CONSOLIDATED**

**562 EXPRESS, INC.,**

       **Defendant.**

---

### DEFENDANTS' URI SILVER, ITAMAR ARONOV, ANTONIO HERNANDEZ, AND DAYANA DIAZ'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS

---

       **COME NOW**, putative Defendants, Uri Silver ("Silver"), Itamar Aronov ("Aronov"),

Antonio Hernandez ("Hernandez"), and Dayana Diaz ("Diaz") (together here, the "Defendants"),

pursuant to Fed. R. Civ. P. 9(b) and 12, by and through undersigned counsel of record, and file this Memorandum of Law in Support of their Joint Motion to Dismiss the claims purportedly brought against them, as individuals, by Plaintiff, OJCommerce, LLC d/b/a OJ Commerce, LLC ("OJ Commerce").  For the reasons stated herein, as well as all others discerned by the Court, OJ Commerce's claims against the Defendants should be dismissed with prejudice.

## INTRODUCTION

While the facts of the case, and the claims arising therefrom, are contested, the underlying nature of the case is not especially complicated.  Yet and still, having failed to elude the claims against it, OJ Commerce - and by extension Defendant Jacob Weiss ("Weiss") - have reverted to trying to muddy the clear waters exposing its own liability in an effort to distract the Court and create delay, by filing a meritless Counterclaim seeking to bring into the case new individual Defendants.

To date, this case has been by and between OJ Commerce, and its principal, Weiss, on the one hand, and HYC Logistics, Inc. ("HYC") and 562 Express, Inc. ("562"), on the other.  OJ Commerce originally claimed that HYC and 562 "stole" certain shipping containers the transport for which OJ Commerce had contracted with HYC under a written Service Contract.  OJ Commerce's primary contention was that HYC and 562 made off with OJ Commerce's goods and have held them "hostage" for the last several months.  HYC disputes this claim and instead maintains that it is lawfully enforcing the contractual lien agreed to by the parties in the Service Contract and that HYC intends to sell the contents of the nine (9) containers to pay down the contractual debt owed plus other damages owed to HYC as a result of OJ Commerce's failed performance and Weiss's unlawful misconduct.[1]

---

[1] OJ Commerce originally sued 562 in a separate suit in California – with that suit ultimately being transferred to this judicial district and consolidated with this matter as each suit involved common questions of law and fact.

OJ Commerce originated its action against 562 alone —in California— on January 8, 2023 – nearly a year ago.[2]  HYC filed its original Complaint against OJ Commerce and Weiss on February 2, 2023.  (D.E. 1).  On March 30 and 31, 2023, respectively, Weiss and OJ Commerce moved to dismiss HYC's Complaint against them for, *inter alia*, lack of personal jurisdiction, improper venue, and failure to state a claim.  On May 17, 2023, HYC and 562 filed their Joint Motion to Consolidate the present dispute, with the matter transferred from the California federal court.  (D.E. 29).  On July 31, 2023, the Court denied OJ Commerce's Motions to Dismiss, and granted the Joint Motion to Consolidate.  (D.E. 32).  Weiss filed his Answer on August 14, 2023, (D.E. 36), and OJ Commerce finally filed its Answer —which contains the putative Counterclaim— on September 29, 2023.   In what is clearly an attempt at scorched Earth retribution, OJ Commerce's Counterclaim seeks to name as Defendants, any employee of HYC or 562 who may have had any involvement in the business transactions which took place between HYC and OJ Commerce.  None of the newly named individual Defendants have ever been a party to this case before.

OJ Commerce's Counterclaim asserts two (2) basic premises: (1) that HYC's and 562's officers and/or employees conspired together to harm OJ Commerce; and (2) that certain of the individual Defendants, somehow, intentionally tricked OJ Commerce into entering into the Service Contract with HYC in the first place by quoting OJ Commerce lower shipping prices than that which was ultimately charged.  But OJ Commerce entirely fails to set forth any facts —beyond hyperbole and legal conclusions— that can support either of the claims asserted and the facts presently in the record eviscerate these fictional claims.

---

[2] The action was originally filed in the Central District of California pursuant to Case No. 2:23-cv-00106-SPF-AGR. Upon Motion, Judge Garnett correctly transferred this action to the Western District of Tennessee, where this Court ultimately consolidated that action with HYC's suit against OJ and Weiss.

After sifting out OJ Commerce's nonsense couched as factual allegations, the Court is left with few basic facts from which it is supposed to draw the conclusion that everyone one of these individual employees coordinated to go after and defraud OJ Commerce.  Namely, (1) that these individual employees knew OJ Commerce "cancelled" the Service Contract[3]; and (2) that these individual employees all agreed that 562 would pick up the goods anyway in a deliberate effort to unlawfully harm OJ Commerce.  OJ Commerce offers no facts to support the direct participation of any of these individual employees, and yet, OJ Commerce effectively urges the Court to conclude that a broad conspiracy among random employees, whom OJ Commerce cannot even say ever met or spoke with one another, carried out some unlawful act.

But in alleging all of the causes of action asserted against these individual employees, OJ Commerce is required to come armed with more than mere generalizations, conclusions, and innuendo.  OJ Commerce is required by law to set forth, with specificity, what each person did, when they did it, how they did it, who they did it with, and why they did it. Failure to do so must result in this Court's dismissal of the claims asserted.

In OJ Commerce's Counterclaim there are no facts to support the contention that these individual employees played any personal role in any of what OJ Commerce alleges.  Indeed, it is patently unclear, at the threshold, how any of these individuals are even subject to personal jurisdiction in Tennessee.[4]

---

[3] OJ Commerce's own Counterclaim asserts that, at best, it purported to cancel the Service Contract only a few hours before the goods were picked up at port.

[4] While HYC and OJ Commerce consented to jurisdiction in Tennessee, all their individual employees – in each's individual capacity - most certainly did not.  It is, therefore, OJ Commerce's burden to demonstrate personal jurisdiction over each of these individuals and OJ Commerce has failed to do so.

OJ Commerce's ill-fated and poorly made attempt to expand this litigation beyond what it is should be, must be firmly rebuffed by the Court. The Counterclaim, and all causes of action asserted against these individual Defendants therein, must be dismissed with prejudice.

## LAW AND ARGUMENT

### I.    STANDARDS OF LAW

#### A.  Rule 12(b)(6)

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a trial court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotations omitted). The trial court is under no obligation to "accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539; *see Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

In 2007, the United States Supreme Court initiated a substantive overhaul of the motion to dismiss standard, which, for a half century, had been that a court may only dismiss a complaint for failing to state a claim when "it appear[ed] beyond doubt that the plaintiff c[ould] prove not set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957). The Court, in *Bell Atlantic Corporation v. Twombly*, abrogated the *Conley* standard, stating that it was "best forgotten." 550 U.S. 544, 563 (2007). The *Twombly* Court explained that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

at 555.  In light of *Twombly*, the Sixth Circuit explained:

> Plaintiffs' obligation to provide the grounds of their entitlement to relief requires
> more than labels and conclusions or a formulaic recitation of the elements of the
> cause of action.  The factual allegations, assumed to be true, must do more than
> create speculation or suspicion of a legally cognizable cause of action; they must
> show *entitlement* to relief.  To state a valid claim, a complaint must contain either
> direct or inferential allegations respecting all the material elements to sustain
> recovery under some viable legal theory.

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing

*Twombly,* 550 U.S. 544 (2007) (internal citations and quotations omitted).

The Supreme Court followed *Twombly* with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), two

(2) years later.  *Iqbal* undoubtedly continued many of the same rationales supporting dismissal of

a plaintiff's complaint espoused in *Twombly*, especially where a plaintiff makes only "formulaic

recitations of the elements of a cause of action" and "mere labels and conclusions," as well as

when a plaintiff makes only "naked assertions devoid of further factual development."  *Iqbal* 556

U.S. at 678.  More pointedly, the Court stated that "the pleading standard [Fed. R. Civ. P. 8]

announces does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Id*. (quoting *Twombly,* 550 U.S. at 555).

> The plausibility standard is not akin to a probability requirement, but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are merely consistent with a defendant's liability, it stops
> short of the line between possibility and plausibility of entitlement to relief.

*Id*. (internal quotations omitted) (internal citations omitted).  The *Iqbal* Court promulgated a two-

part test for determining the sufficiency of a plaintiff's pleading.  In the first step, a trial court

begins by examining the pleadings and identifying allegations and claims that are nothing more

than conclusions, which are entitled to no assumption of truth.  *Id*. at 679.  Upon discarding the

offending allegations[5], the trial court then considers whether the allegations that are left "plausibly suggest entitlement to relief[6]." *Id*. at 681.

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted).   Stated another way, complaints must contain "plausible statements as to when, where, in what or by whom." *Center for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 373 (6th Cir. 2011).

## B.  <u>Rule 9(b)</u>

While most claims are subject to the well-known plausibility standard outlined by *Twombly* and *Iqbal*, *supra*, certain other claims must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see U.S. ex rel. SNAPP, Inc. v. Ford Motor* Co., 532 F.3d 496, 503 (6th Cir. 2008) (reciting that Rule 9(b)'s "special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs most cases.").   "In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P*., 2 F.3d 157, 161–62 (6th Cir. 1993).  Stated more plainly, a plaintiff must allege the proverbial who, what, when, where, why, and how.

---

[5] Indeed, the *Iqbal* Court characterizes such allegations as being "rejected."  *Id*. at 681.
[6] "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not show[n]— that the pleader is entitled to relief."  *Id*. at 680 (internal citations omitted) (internal quotations omitted).

Moreover, Sixth Circuit precedent stands for the proposition that any claim sounding in fraud—not just those alleging a claim of fraud—must meet Rule 9(b)'s pleading standard. *Bush Truck Leasing, Inc. v. Cummins, Inc*., No. 1:18-CV-871, 2020 WL 3871322, at *5 (S.D. Ohio July 9, 2020). "[W]hen a party brings both fraud and negligent misrepresentation claims but fails to plead an independent basis of liability for each of the claims, courts will apply Rule 9(b)'s standard to both claims." *In re Nat'l Century Fin. Enterprises, Inc*., 504 F. Supp. 2d 287, 322 (S.D. Ohio 2007); *see Harris v. Nationwide Mut. Fire Ins. Co*., 367 F. Supp. 3d 768, 777–78 (M.D. Tenn. 2019) ("[T]he current consensus of federal courts is that Rule 9(b) governs negligent misrepresentation claims brought under Tennessee law.").

### C.  Rule 12(b)(2)

There is little need in reinventing the wheel regarding the standard for personal jurisdiction. This Court cogently recited the basic standards in its prior Order, to wit:

> Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). A plaintiff has the burden of showing that the court has personal jurisdiction over a defendant. *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002). And so, if a defendant properly supports its motion to dismiss, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).
>
> District courts have discretion in how they resolve a Rule 12(b)(2) motion. *Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 505 (6th Cir. 2020) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). A court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dean v. Motel 6 Operating L.P*., 134 F.3d 1269, 1271–72 (6th Cir. 1998) (quoting *Serras*, 875 F.2d at 1214). The method of evaluation, moreover, affects the plaintiff's burden. *See Malone*, 965 F.3d at 505.

(D.E. 32 at Page ID 243) (Court's July 31, 2023, Order denying Weiss's Motion to Dismiss for lack of personal jurisdiction).  As the Court recited, jurisdiction over an out-of-state defendant is

coterminous with the Due Process Clause of the Fourteenth Amendment, (*Id*. at 244-45), and may be general (i.e., jurisdiction for all purposes) or specific (i.e., only as to the events at issue), (*Id*. at 253-58).

## II.   OJ COMMERCE'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS HERE MUST BE DISMISSED

OJ Commerce's overarching argument against the individual Defendants here is that because they were employees or officers of HYC and/or 562, they bear some species of personal and direct liability to OJ Commerce with regard to the relationship between OJ Commerce, HYC and 562, and the transaction involving the containers and/or goods at issue.  OJ Commerce alleges that, "upon information and belief":

- Silver (a resident of the State of Israel) is President of HYC;

- Aronov (a New Jersey citizen) was VP of Sales for HYC;

- Hernandez (a California citizen) was a VP of 562; and

- Diaz (a California citizen) was a dispatcher —a line level employee— of 562.

(*See* D.E. 49 at Page ID 327-28, ¶¶ 3-4, 6-7).

### A.   OJ Commerce Has Failed to Establish Personal Jurisdiction Over the Defendants and the Claims Against Them Must Therefore be Dismissed

OJ Commerce's Counterclaim then goes one step further, asserting, as the sole basis for personal jurisdiction, that each of the Defendants, individually as natural persons, somehow affirmatively consented to jurisdiction in the Western District of Tennessee because their respective employer (HYC or 562) purportedly did so.  This, despite the fact that none of the Defendants, as individuals, signed the Contract or are contemplated therein in their individual capacities, (*see* D.E. 1-2) (copy of the NCBFAA Terms & Conditions of Service).

As such, OJ Commerce's basis for personal jurisdiction arises almost entirely from a classic "whataboutism."[7]  OJ Commerce suggests that because the Service Contract was previously relied upon by HYC and 562 for the purpose of conferring jurisdiction over both OJ Commerce and Weiss in Tennessee, the same must be true for the individual Defendants as well.  However, OJ Commerce conveniently (or selectively) forgets that the Court's basis for finding jurisdiction in Tennessee over Weiss in Tennessee was not his signature on the Contract, but was his own purposeful, allegedly fraudulent conduct, with regard to the transactions which took place in Tennessee.  (*See* D.E. 32 at Page ID 245).  Absent clear allegations, with particularity, against each of the individual Defendants tying them to the State of Tennessee, jurisdiction foes not lie and the Counterclaim must be dismissed.

It is the burden of the party invoking jurisdiction —here, OJ Commerce— to demonstrate that the Court has personal jurisdiction over the individual Defendants.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  OJ Commerce has undoubtedly and conspicuously failed to even approach carrying its burden in this regard.

Save for alleging that the Defendants were employed by either HYC or 562, the Counterclaim contains *no* other substantive factual allegations[8] demonstrating that any of the Defendants, directly and personally participated in the allegedly unlawful conduct nor that any of the Defendants acted in any way that would trigger personal jurisdiction in the Western District of Tennessee.  Instead, OJ Commerce relies on a manufactured reverse *respondeat superior* theory - because HYC and 562 are subject to jurisdiction in Tennessee, and because HYC and 562 are

---

[7]  Whataboutism is a technique of responding to well-founded accusations of misconduct by making a counteraccusation against them accuser.

[8]  Not to be confused with OJ Commerce's overuse of hyperbole and bald legal conclusions – none of which are entitled to any deference at the motion to dismiss stage.

alleged to have wronged OJ Commerce, then the individual Defendants who worked for HYC and 562 should also be hauled into Court here in Tennessee. This is clearly wrong.

OJ Commerce makes no allegation that any of the Defendants are bound by the Service Contract or that any of them consented to jurisdiction in Tennessee by and through that Service Contract. The Service Contract was between HYC and OJ Commerce (signed by Weiss on OJ Commerce's behalf), and no one else. The notion that an employee or officer can be bound, personally and individually bound, by his or her company's consent to jurisdiction of itself in a service contract is without any basis in law and clearly does not align with Due Process. OJ Commerce fails to offer a single fact sufficient to demonstrate that the individual Defendants have ever been to Tennessee, purposely availed themselves of the laws of the State of Tennessee, or have sufficient minimum contacts with the State of Tennessee such that they should have expected to be sued in Tennessee.

Indeed, OJ Commerce's singular allegation against each of the Defendants is that they "had knowledge" of HYC's and 562's purportedly unlawful conduct. (*See, e.g.*, D.E. 49 at Page ID 342, ¶ 80; Page ID 343-44, ¶¶ 87-89). However, "having knowledge" of the allegedly wrongful conduct of one's employer is not a functional equivalent for actively engaging in unlawful conduct, individually, and on one's own behalf.[9] Of course, this same absence of any substantive —let alone specific— allegations of individual conduct likewise doom OJ Commerce's claims against the Defendants from a traditional Rule 12(b)(6) perspective.

---

[9] What is more, even if the Defendants had harmed OJ Commerce in some way —which is expressly and completely denied— that harm occurred and accrued in some venue other than Tennessee. For instance, even had the Defendants engaged in some form of unlawful conduct, that conduct occurred in either New Jersey or California, and allegedly caused harm in Florida. HYC, 562, and OJ all find themselves in Tennessee because of the Contract, and Weiss finds himself here because he directed his unlawful activities into this judicial district. There is nothing in the Counterclaim to suggest that any of the Defendants purposely availed themselves of the laws of the State of Tennessee.

Relatedly, the individual Defendants here are likewise protected by the fiduciary shield doctrine. "This doctrine provides that, when an individual defendant is an officer of a corporation, a court may not exercise personal jurisdiction over the defendant based on actions taken in his or her corporate capacity." *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc*., 761 F. Supp. 2d 726, 730–31 (M.D. Tenn. 2011); *Sledge v. Indico Sys. Res., Inc*., 68 F. Supp. 3d 834, 841 (W.D. Tenn. 2014). Here, there is not a single alleged fact that the individual Defendants were acting in anything other than their capacity as officers and/or employees. To the contrary, OJ Commerce avers that the Defendants undertook their alleged actions (to the extent ever identified) as part and parcel to the underlying business transaction. OJ Commerce has totally failed to make any meaningful factual allegations that affirmatively establish that any of the Defendants were acting beyond their capacity as officers or employees and therefore the claims are barred under the fiduciary shield doctrine.

**B. OJ Commerce Has Failed to State a Claim Upon Which Relief Can be Granted Against the Defendants, and to Plead with the Requisite Level of Specificity and/or Particularity. The Counterclaim against these Defendants Must Therefore be Dismissed**

Rather than make any allegations against the individual Defendants, OJ Commerce takes the proverbial shotgun blast approach, purporting to recite conclusory claims in tort, and then alleging broadly that either (1) the individual Defendants either "aided and abetted" the purportedly unlawful conduct of HYC and/or 562, or (2) that the individual Defendants somehow conspired to accomplish that unlawful conduct. However, while OJ Commerce claims a laundry list of complaints, OJ Commerce fails to actually aver a single specific fact supporting any of them.

### i.    *Counts VII and VIII (aiding and abetting) must be Dismissed*

While Tennessee does recognize a civil cause of action for aiding and abetting, it requires pleading specific acts which demonstrate the alleged defendant knew the underlying conduct was

wrong, but nonetheless provided "substantial assistance" to accomplish the tort. *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012); *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn. 1978) (overruled on other grounds). Moreover, "civil liability for aiding and abetting requires affirmative conduct [and the] failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability." *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 836 (Tenn. 1997) (overruled on other grounds). Tennessee law does not recognize a claim for aiding and abetting claims regarding breach of contract. *Fuller v. Cmty. Nat'l Bank*, No. E201802023COAR3CV, 2020 WL 1485696, at *12 (Tenn. Ct. App. Mar. 27, 2020).

Aside from alleging that the individual Defendants "knew" that neither HYC, nor 562, had permission or authority to retrieve the goods at issue, and then making the conclusory statement that "each of them actively participated in 562's theft," OJ Commerce offers nothing more. (*See* D.E. 49 at Page ID 343-44, ¶¶ 87-90) (alleging Count VIII). Not only has OJ Commerce failed to demonstrate an underlying tort which the individual Defendants could have aided and abetted, OJ Commerce has entirely failed to establish what the Defendants allegedly did, when they did it, or how they knew it was wrong. To be sure, OJ Commerce throws around the buzzwords of "substantial assistance" but, again, OJ Commerce offers nothing to even claim these Defendants offered substantial assistance to accomplish the claimed torts.

There are no allegations in the Counterclaim that demonstrate that anyone did anything other than exactly what OJ Commerce contracted for – to have its containers received at port and picked up. Because OJ Commerce failed to assert any specific acts which demonstrate the alleged Defendants knew the underlying conduct was wrong and nonetheless provided substantial

assistance to accomplish the tort, OJ Commerce's claims for aiding and abetting fail and must be dismissed.

### ii.        Count IX (conspiracy) must be Dismissed

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau–Med of Am., Inc. v. Allstate Ins. Co*., 71 S.W.3d 691, 703 (Tenn. 2002); *see Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)

For a conspiracy claim to survive a motion to dismiss, a plaintiff must allege: (i) the existence of a single plan; (ii) that the co-conspirators shared in a general conspiratorial objective; and (iii) an overt act in furtherance of the conspiracy that caused injury to the plaintiff.  Conspiracy claims must be pled with some degree of specificity.  *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002); *Harris v. Goins*, 156 F. Supp. 3d 857, 866 (E.D. Ky. 2015) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Conclusory allegations unsupported by material facts will not be sufficient to state such a claim. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

A claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id*. at 179–80.

Here again, in pleading its Count IX, OJ Commerce fails to satisfy the requisite pleading requirement.  OJ Commerce makes only generalized statements and legal conclusions regarding its claim for conspiracy.  (*See* D.E. 49 at Page ID 345-46).  The entirety of the conspiracy claim is

that the individual Defendants knew what HYC and/or 562 was doing was wrong, but the Defendants work together to assist HYC and/or 562 in some unidentified way.

Equally, as unsustainable and ripe for dismissal, OJ Commerce claims that Silver and Aronov —both identified as officers of HYC— conspired to defraud OJ Commerce and that Hernandez and Diaz —both identified as officers and/or employees of 562— likewise conspired to defraud OJ. But these claims of intra-corporate conspiracy fail on their face because of the intra-corporate immunity doctrine. Stated plainly, intra-corporate immunity doctrine provides that any act of conspiracy on the part of HYC's officers or employees are attributable to the entity, not the individuals. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703-04 (Tenn. 2002). The same is true of 562. Thus, even if there was a common scheme among Silver and Aronov, that scheme is HYC's, not their own, and there can be no claim of conspiracy between Silver and Aronov as individuals. The same is true of Hernandez and Diaz and 562.

The intra-corporate immunity doctrine embodies the idea that a corporation, despite having many moving parts (including its own employees), is a single, legal person. Therefore, the entity cannot conspire with itself. Where multiple employees act in concert for the benefit of the corporation, there is no conspiracy; though, it could be true that the corporation is then potentially subject to liability itself. *Id.* at 704 ("for a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation.").

The doctrine is, of course, unnecessary to apply in any event unless and until OJ Commerce makes out a claim for conspiracy —against anyone— which it has failed to do. Indeed, there are no facts that even suggest that HYC or 562 —let alone their individual officers or employees—

ever engaged with one another for some unlawful purpose.  But even had OJ Commerce effectively

pled weith specificity the requisite facts for a conspiracy claim, the claim as to Silver and Aronov

for HYC and Hernandez and Diaz for 562, fails and must be dismissed.

### iii.   Count XI (fraud) must be Dismissed

While it is entirely general and rather unclear, OJ Commerce seems to allege that, absent

the allegedly untrue statements of HYC and certain of the Defendants —specifically, Silver and

Aronov— concerning the pricing for HYC's services, OJ Commerce never would have entered

into the Contract in the first place.  (*See* D.E. 49 at Page ID 347-48).  Of course, OJ Commerce

ignores the fact that it partially paid for HYC's services under the Service Contract and pledged to

pay the remainder.  OJ Commerce also ignores the plain language of the Contract itself which

contains several provisions which relate – exactly to – and negate this very claim:

> **4. No Liability for The Selection or Services of Third Parties and/or Routes**.. .
> advice by the Company that a particular person or firm has been selected to render
> services with respect to the goods, shall not be construed to mean that the Company
> warrants or represents that such person or firm will render such services nor does
> Company assume responsibility or liability for any actions(s) and/or inaction(s) of
> such third parties and/or its agents, and shall not be liable for any delay or loss of
> any kind, which occurs while a shipment is in the custody or control of a third party
> or the agent of a third party; all claims in connection with the Act of a third party
> shall be brought solely against such party and/or its agents; in connection with any
> such claim, the Company shall reasonably cooperate with the Customer, which
> shall be liable for any charges or costs incurred by the Company.

> **5. Quotations Not Binding**. Quotations as to fees, rates of duty, freight charges,
> insurance premiums or other charges given by the Company to the Customer are
> for informational purposes only and are subject to change without notice; no
> quotation shall be binding upon the Company unless the Company in writing agrees
> to undertake the handling or transportation of the shipment at a specific rate or
> amount set forth in the quotation and payment arrangements are agreed to between
> the Company and the Customer.

(D.E. 1-2 at Page ID 33-34) (Paragraph 4, disclaiming liability for actions by third parties,

including shippers; Paragraph 5, disclaiming liability for variations in pricing and warning OJ

Commerce that prices are subject to change).[10]  Thus, despite the fact that (1) OJ Commerce is a sophisticated commercial party; and (2) despite the fact that the Service Contract itself contains clear provisions dealing with potential price fluctuations; and (3) despite the fact that OJ Commerce partially paid and pledged future payment; OJ Commerce now, for the first time nearly a year after litigation was commenced by HYC against OJ Commerce, complains it was defrauded. The undisputed facts of this case, prove that OJ Commerce's fraud claim is completely erroneous and should be dismissed.

But even were (1) OJ Commerce not a sophisticated commercial party; and (2) even if the Service Contract itself did not contain a clear provision dealing with potential price fluctuations; and (3) even if OJ Commerce had not partially paid and pledged future payment, the facts as stated in OJ Commerce's Counterclaim are wholly insufficient to maintain a claim against Silver or Aronov.  The Counterclaim does not allege what representations were alleged to have made, who allegedly made them, when they were allegedly made, or what about them caused OJ Commerce damage.  Instead, all OJ Commerce says is that "the Defendants defrauded me and I've been harmed" which is precisely the sort of thing proscribed by *Twombly*/*Iqbal* generally, and Rule 9(b) specifically.

It is, of course, ubiquitous, that allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  To meet that standard, "[a] complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 823 (W.D. Tenn. 2020) (quoting *Dougherty v. Esperion*

---

[10] As an aside, Paragraph 3 of the Contract sets out agreed upon several contractual limitation periods which bar OJ Commerce's claims against HYC and 562.  So too, Paragraph 9 contains limitations on liability that bar OJ's claims against HYC and 562.

*Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018); *see Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011) (to sustain a claim for fraudulent inducement, a plaintiff must establish that the defendant: (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance). This means that the party must allege "the time, place, and content of the alleged misrepresentation on which he or she relied." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir. 2007). The purpose of this heightened pleading standard is two-fold: (1) "to put defendants on notice of the alleged misconduct," and (2) "to prevent fishing expeditions and to narrow potentially wide-ranging discovery to relevant matters." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255 (6th Cir. 2012). Equally salient here, "allegations based on information and belief fail to satisfy the particularity requirement of Rule 9(b)." *In re Sirrom Cap. Corp. Sec. Litig.*, 84 F. Supp. 2d 933, 939 (M.D. Tenn. 1999); *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 591 (E.D. Mich. 1985).

Fatal for OJ Commerce here, besides simply implying that the prices charged by HYC were higher than OJ Commerce had expected, OJ Commerce never makes any specific factual allegations regarding what representations of fraud were purportedly made, by whom they were made, and to what effect – beyond making a general statement of harm. In order to survive a Motion to Dismiss, OJ Commerce must plead what about the representations makes them false? What prices were quoted and by whom? When the alleged representations were made? How the prices deviated from what was expected (or what is the market rate)? What evidence exists that the representations were made with a fraudulent intent? And what losses OJ Commerce incurred as a result of the alleged fraud?

Because the undisputed material facts that exist in the record of this case negate its newfound claim for fraud and also because OJ Commerce failed to plead with specificity as strictly required Fed. R. Civ. P. 9(b), the claim for fraud must be dismissed with prejudice.

## CONCLUSION

Before the Court is a claim between HYC, OJ Commerce, and Weiss. HYC contracted to provide logistical services to OJ Commerce, with HYC hiring 562 as an over-the-road carrier for OJ Commerce's goods. Despite the fact that all parties have asserted claims of breach of contract against the opposing party (or declaratory relief along the same lines), OJ Commerce has gone out of its way to make this litigation as time consuming and opaque as possible. Now, because Weiss's attempt at dismissal of his own misconduct was denied, OJ Commerce has decided to chart a new course by trying to name anyone and everyone it can think of as individual Defendants. But OJ Commerce offers no facts to support its claims and the facts already in the record undermine the claims OJ Commerce is trying to make. OJ Commerce's attempt to create some sort of grand conspiracy, where none exists, is wholly without factual support or merit.

HYC sued OJ Commerce for breaching the Service Contract and not paying HYC for services rendered. HYC likewise sued Weiss directly based upon his misrepresentations and fraudulent business practices. In what can only be seen as unethical revenge, OJ Commerce has now taken to naming as Defendants employee individuals. Instead of making concrete, specific allegations of fact —which is required for all of the causes of action asserted against these Defendants— OJ Commerce defaults to simply making the conclusion that they all "knew" 562 should not have picked up the shipment, but allowed it to happen anyway. This cannot stand. Setting aside the jurisdictional defects, even were the Court to simply accept what little facts are pled as true, OJ Commerce has utterly failed to set out a cause of action for aiding and abetting,

conspiracy, or fraud.  Once the Court dispenses with all of OJ Commerce's "upon information and belief" recitals —which are entitled to no presumption of truth and cannot sustain a cause of action to which Rule 9(b) applies— the Court is left with nothing on which to deny the dismissal being sought herein.

The Court must see this latest effort by OJ Commerce as just the next strategic measure to distract the attention of this Court from the real issues, to create delay, and to generate unnecessary attorney's fees.

For the reasons stated herein, as well as all others discerned by the Court, OJ Commerce's Counterclaim against Defendants, Uri Silver, Itamar Aronov, Antonio Hernandez, and Dayana Diaz should be DISMISSED with prejudice.

**GLANKLER BROWN, PLLC**

By:  /s/ S. Joshua Kahane
       S. Joshua Kahane (TN #23726)
       Aubrey B. Greer (TN #35613)
       Yosef Horowitz (TN #36353)
       6000 Poplar Avenue, Suite 400
       Memphis, Tennessee  38119
       Phone : (901) 525-1322
       Fax : (901) 525-2389
       jkahane@glankler.com
       agreer@glankler.com
       jhorowitz@glankler.com

*Attorneys for Defendants HYC Logistics, Inc., 562 Express, Inc., Itamar Aronov, Uri Silver, Antonio Hernandez, and Dayana Diaz*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, a copy of the foregoing has been served upon the following by operation of the Court's ECF system and email:

Aaron W. Davis
Valhalla Legal, PLLC
204 West 7th Street, PMB 222
Northfield, MN 55057
davis@valhallalegal.com

Sam Hecht, Esq.
The Law Offices of Shlomo Y. Hecht, P.A.
3076 N Commerce Parkway
Miramar, FL 33025
sam@hechtlawpa.com

/s/      S. Joshua Kahane
           S. Joshua Kahane