```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

```
HYC LOGISTICS, INC.,              )
                                  )
     Plaintiff/                   )
     Counter-Defendant,           )
                                  )
v.                                )       No. 23-cv-02050-TLP-tmp
                                  )
JACOB WEISS, INDIVIDUALLY,        )
                                  )
     Defendant,                   )
                                  )
and                               )
                                  )
OJCOMMERCE, LLC D/B/A             )
OJ COMMERCE, LLC,                 )
                                  )
     Defendant/                   )
     Counter-Plaintiff,           )
                                  )
v.                                )
                                  )
562 EXPRESS, INC.,                )
                                  )
     Counter-Defendant.           )
```

ORDER ON MOTION TO STRIKE AND OMNIBUS MOTIONS IN LIMINE (ECF
NOS. 232 AND 233)

Before the court by order of reference are defendants Jacob Weiss and OJCommerce, LLC's ("OJ Commerce" or "OJC") Motion to Strike and Omnibus Motions in Limine, filed on August 16, 2024. (ECF Nos. 232, 233.) Plaintiff HYC Logistics, Inc. ("HYC") and counter-defendant 562 Express, Inc. ("562") filed their response on August 30, 2024. (ECF Nos. 235, 236.)

## I.   Defendants Weiss and OJ Commerce's Motion to Strike

In their first motion, defendants ask the court to strike "improper allegations" relating to HYC and 562's repeated references to OJC's previous litigation in HYC's complaint and subsequent motions. (ECF No. 232 at PageID 3536.) Defendants assert that these allegations are inadmissible, irrelevant, and prejudicial to OJC and Weiss. (Id. at PageID 3533-36.) In Exhibit A to defendants' motion, they identify six filings from which they ask the court to strike such allegations, including HYC's original complaint and five of HYC and 562's responses to defendants' various motions. (ECF No. 232-1 at PageID 3539-40.) In their response, HYC and 562 assert that defendants' motion should be denied as untimely because it was "filed well past [the] 21-day deadline" provided by Federal Rule of Civil Procedure 12(f) and is improperly directed towards motions, which "are not [] pleading[s] for purposes of the Rules of Federal Procedure." (ECF No. 235 at PageID 3645-46.) The court agrees with HYC and 562.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may do so "on its own; or on motion by a party either before responding to the pleading or, if response is not allowed, *within 21 days* after being served with the pleading." Fed. R. Civ. P. 12(f)(1)-(2) (emphasis added). "Motions to strike are viewed with disfavor and not

frequently granted." <u>Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.</u>, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing <u>Brown & Williamson Tobacco Corp. v. United States</u>, 201 F.2d 819, 822 (6th Cir. 1953)). "Any doubt whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." <u>Jewell v. Shelby Cnty. Gov't</u>, No. 13-2048-STA-dkv, 2013 WL 5306102, at *4 (W.D. Tenn. Sept. 20, 2013) (citing 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1382 Motion to Strike — Redundant, Immaterial, Impertinent, or Scandalous Matter (3d ed. 2004)).

First, defendants' motion is untimely. Rule 12(f) provides that any motion to strike must be made "within 21 days after being served." Fed. R. Civ. P. 12(f)(2). Failure to timely file is a proper basis for denial. <u>Cherry v. Apple CLK, LLC</u>, No. 3:20-cv-00176, 2020 WL 5912814, at *2 (M.D. Tenn. Oct. 6, 2020) (denying a motion to strike filed ninety days after the challenged pleading). HYC filed its initial complaint on February 2, 2023, and its last filing referencing defendants' purported litigation history was on July 5, 2024. (ECF Nos. 1, 213.) Defendants did not file their motion to strike until August 16, 2024, well past the twenty-one-day deadline for even the most recent challenged filing. (ECF No. 232.) Although the court may exercise its discretion to consider the merits of defendants' argument regardless of timeliness, <u>see</u> <u>Lyons v. Erie Ins. Co.</u>, No. 3:19-

- 3 -

CV-325-HBG, 2021 WL 848173, at *2 (E.D. Tenn. Mar. 5, 2021) (denying plaintiffs' motion to strike on the merits despite its untimeliness), the court declines to do so here and instead considers the admissibility of HYC and 562's allegations under defendants' motion to exclude below.

Second, defendants' Rule 12(f) motion is procedurally improper with respect to HYC and 562's responses to motions. The text of Rule 12(f) "provides a basis for striking pleadings, not motions." Kremer v. Reddit, Inc., No. 2:21-cv-00038, 2021 WL 4909953, at *1 (M.D. Tenn. Oct. 18, 2021). "For purposes of the Federal Rules of Civil Procedure, a motion and its contents are not 'a pleading.'" Reynolds & Reynolds Co., Inc. v. Alan Vines Auto. of Jackson, LLC, No. 1:20-mc-0003-STA, 2020 WL 5797922, at *2 (W.D. Tenn. Sept. 28, 2020); see also Fed. R. Civ. P. 7(a) (defining pleading). Because five of the six documents identified by defendants are HYC and 562's responses to motions, not pleadings, defendants' motion to strike portions of those responses under Rule 12(f) is improper.

For the above reasons, defendants' motion to strike is DENIED.

## II. Defendants Weiss and OJ Commerce's Omnibus Motions in Limine

### A. Motion #1 to Exclude Evidence Concerning Prior Lawsuits

In their first motion in limine, defendants seek to exclude evidence of the same twenty-two case litigation history at issue in their motion to strike. (ECF No. 233.) Defendants assert that

such evidence is inadmissible under Federal Rules of Evidence 402, 403, and 404 because it is irrelevant, unduly prejudicial, and improper character evidence. (Id. at PageID 3543.)[1] HYC and 562 counter that this evidence is admissible under Rule 404(b), as evidence of defendants' "state of mind," and under Rule 406, as evidence of defendants' routine practice. (ECF No. 236 at PageID 3651-52.)

Under the Federal Rules of Evidence, relevant evidence is generally admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 404 prohibits the use of character evidence "to prove that on a particular occasion the person acted in accordance with [that] character or trait." Fed. R. Evid. 404(a)(1). Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not

---

[1]Defendants correctly note that irrelevant evidence is excluded under the Federal Rules of Evidence, but incorrectly cite Rule 401 (defining relevance) for this proposition. (ECF No. 233 at PageID 3543.)

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Sixth Circuit applies a multi-part test to determine whether prior acts evidence is admissible:

> (1) the evidence must be directed toward establishing something other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and that the party in question committed it; and (4) the prejudicial effect of the evidence must not clearly outweigh its probative value.

McLeod v. Parsons Corp., 73 F. App'x 846, 854 (6th Cir. 2003).[2]

Here, HYC and 562 assert that evidence of defendants' litigation history should be admitted under Rule 404(b) because it establishes a "prior, similar course of conduct" and is evidence of defendants' state of mind, "including [defendants'] notice of, knowledge about, and deliberate intent and practice to not pay service providers." (ECF No. 236 at PageID 3651.) The court finds

---

[2] The Sixth Circuit has sometimes applied a similar three-part test. Compare United States v. Bell, 516 F.3d 432, 440-41 (6th Cir. 2008) (outlining a three-part test) with McLeod, 73 F. App'x at 854 (including the additional factor that the evidence must be "similar enough and close enough in time to be relevant to the matter at issue").

that evidence of defendants' prior lawsuits is inadmissible under Rule 404(b). See McLeod, 73 F. App'x at 854 (affirming district court's exclusion of evidence of prior litigation filed against the defendant under Rule 404(b) because it was not relevant, there was no nexus to the current litigation, and there was a potential for prejudice); Garren v. CVS RX Servs., Inc., No. 3:17-CV-149, 2021 WL 781677, at *11 (E.D. Tenn. Mar. 1, 2021) (ruling that evidence of prior employment discrimination lawsuits filed against the defendant was inadmissible under Rule 404(b)); Haley v. Kundu, No. 1:11-CV-265, 2013 WL 12030021, at *6 (E.D. Tenn. Apr. 11, 2013) (excluding evidence of defendant's prior litigation under Rule 404(b) because it "b[ore] little to no relevance to the case at hand, any probative value would be clearly outweighed by prejudice to Defendants, and it would likely mislead or confuse the jury").

Evidence of defendants' prior litigation also would violate Rule 403 because of its potential for unfair prejudice and to confuse and mislead the jury. See Ross v. Am. Red Cross, No. 2:09-cv-00905, 2012 WL 2004810, at *5-6 (S.D. Ohio June 5, 2012) (excluding evidence under Rules 402 and 403 because the "marginal relevance" of other lawsuits "is substantially outweighed by the danger of unfair prejudice and confusion of the issues" and such evidence "may also invite mini-trials about facts and circumstances that may not be similar to the present case"); see also Sadler v. Advanced Bionics, LLC, No. 3:11-CV-00450-TBR, 2013

- 7 -

WL 1340350, at *4 (W.D. Ky. Apr. 1, 2013) ("[T]he number of other lawsuits filed against Defendant should be excluded as irrelevant and because the risk of unfair prejudice substantially outweighs any probative value of its evidence.").

HYC's complaint alleges a pattern of non-payment by defendants, but its only "evidence" is merely a list of twenty-two previously filed complaints with no additional details. (ECF No. 1 at PageID 6.) In their response to defendants' motion, HYC and 562 highlight two additional examples of litigation (filed after the present litigation) in which OJC is involved, without providing further evidence beyond the bare-bones allegations within those two complaints. (ECF No. 236 at PageID 3650, 3652.) These allegations in complaints from other lawsuits fall well short of the admissibility requirements of the Federal Rules of Evidence. HYC and 562 have likewise failed to explain how the questionable probative value of this evidence outweighs its potential for undue prejudice against the defendants, or how they can avoid confusing the issues or misleading the jury here when attempting to prove allegations contained within twenty-two separate, distinct complaints. As such, evidence of defendants' litigation history is not admissible at trial under Rules 403 and 404(b).

Finally, HYC and 562 assert that evidence of defendants' litigation history is admissible under Rule 406 as evidence of

OJC's routine practice. (ECF No. 236 at PageID 3652.) This argument is also unpersuasive.

Rule 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. To be admitted, the proponent of routine practice evidence must show that "any specific conduct or event . . . is so automatic, so repetitive, that it might approach evidence of habit; it must be done unwittingly." Mattner v. Tom A. Jennaro & Assocs., 941 F.2d 1210 (Table), 1991 WL 159452, at *2 (6th Cir. 1991). The proponent "must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Infocision Mgmt. Corp. v. Found. for Moral Law Inc., No. 5:08-cv-1342, 2011 WL 3022002, at *4 (N.D. Ohio July 22, 2011) (quoting Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1293 (7th Cir. 1988)). HYC and 562's recitations of unproven complaints are not sufficient to show that defendants' conduct rises to the level of being reflexive or semi-automatic. HYC and 562 have not shown that evidence of defendants' litigation history is admissible under Rule 406.

For the above reasons, defendants' first motion in limine to exclude evidence of their litigation history is GRANTED.

**B.   Motion #2 to Prohibit Labeling of Defendants**

Defendants' second motion in limine seeks to prohibit counsel for HYC and 562 from referring to defendants as "fraudsters," "serial litigants," "litigious," and "frauds." HYC and 562 do not oppose this motion and agree to refrain from referring to defendants Weiss and OJC in this manner at trial. (ECF No. 236 at PageID 3653.) Accordingly, it is GRANTED.

**C.   Motion #3 to Preclude Plaintiffs from "Lumping" OJ Commerce and Weiss as Defendants**

In their third motion, defendants insist that "[i]t would be highly prejudicial to OJC and Weiss for HYC to be allowed to lump them together during trial," asking that the court prohibit counsel for HYC and 562 from doing so pursuant to Rule 403. (ECF No. 233 at PageID 3545.) This argument is without merit. It would not be highly prejudicial to refer to OJC and Weiss collectively as defendants because they are, collectively, the defendants. As such, the probative value of referring to OJC and Weiss as defendants is not substantially outweighed by its potential for confusion or undue prejudice. Defendants' third motion in limine is therefore DENIED.

**D.   Motion #4 to Preclude Characterization of the Parties' Standard Operating Procedures as Unilateral**

Defendants next claim that, in HYC's complaint and subsequent filings, HYC and 562 allege that OJC and its CEO Weiss "induced" HYC into continuing the parties' business relationship via a set

- 10 -

of "standard operating procedures" ("SOP").[3] (ECF No. 233 at PageID 3546.) In contrast to HYC and 562's characterization, defendants argue that the SOP was in fact a "collaborative effort" between HYC and OJC, as admitted by HYC's President Uri Silver at his corporate deposition. (Id.) Defendants now seek to bar HYC and 562 from making any future allegations "that the 'collaborative' SOP drafted by HYC's agent . . . was a 'ploy' or instrument of fraud by OJC or Weiss." (Id. at PageID 3547.) They claim permitting such testimony would be highly prejudicial, confuse the issues, mislead the jury, and violate Federal Rule of Civil Procedure 30(b)(6). (Id.)

In their response, HYC and 562 maintain that HYC was "absolutely induced into continuing to provide services to OJC" because of promises made by Weiss and the parties' collaboration on the SOP document. (ECF No. 236 at PageID 3655.) In effect, HYC and 562 admit that the SOP was "collaborative" and not "unilaterally proposed" by OJC; nonetheless, HYC and 562 assert that the false promise of cooperation reflected in the SOP was

---

[3]As defendants highlight in their motion in limine, HYC and 562 allege: "In or around November 2022, . . . in order to induce HYC to provide additional services, OJ Commerce proposed a set of standard operating procedures for future shipments to streamline the process of pick [up] and transport. . . . OJ Commerce had no intention of paying HYC. The standard operating procedure was simply a ploy to get HYC to continue to provide services -- while OJ Commerce refused to pay for said services." (ECF No. 233 at PageID 3546.)

used to "induce" HYC into continuing its relationship with OJC. (Id. at PageID 3654-55.)

Federal Rule of Evidence 403 permits the court to exclude evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" Fed. R. Evid. 403. To rise to the level of "unfair prejudice," challenged evidence must "suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules. Rule 403's balancing test is "strongly weighted toward admission," and trial courts enjoy "'broad discretion' in making the prejudice determination." United States v. Asher, 910 F.3d 854, 860 (6th Cir. 2018) (quoting United States v. Carney, 387 F.3d 436, 451 (6th Cir. 2004)).

Here, the risk of unfair prejudice, confusing the issues, or misleading the jury does not substantially outweigh the probative value of either party's testimony concerning the SOP document. The parties are entitled to present their evidence and argument regarding the SOP, and it will be up to the jury to decide what weight, if any, to give this evidence. See Goldman v. Healthcare Mgmt. Sys., Inc., 559 F. Supp. 2d 853, 870-71 (W.D. Mich. 2008) (concluding that "factual problems" identified by defendants were not reasons to limit witness's testimony, but instead should be resolved by jury after cross-examination).

Defendants' argument under Federal Rule of Civil Procedure 30(b)(6) is also unpersuasive. Relying on Convertino v. United States Department of Justice, No. 07-13842, 2013 WL 153311 (E.D. Mich. Jan. 15, 2013), defendants assert that HYC should be bound by the deposition testimony of its Rule 30(b)(6) witness Silver that the SOP document was "a collaborative effort." (ECF No. 233 at PageID 3547.) But HYC and 562 do not contest the accuracy of Silver's testimony. Rather, HYC and 562 argue that the parties' "collaborative" drafting of the SOP further "induced" HYC into continuing to provide services to OJC. This disagreement again raises a question of weight for the jury's consideration, not a question of admissibility for the court. Defendants are free to challenge HYC and 562's theory at trial.

For these reasons, defendants' fourth motion in limine is DENIED.

### E.   Motion #5 to Sanction HYC and 562 for Alleged Spoliation of Text Messages

In their fifth motion, defendants seek an adverse inference sanction against HYC and 562 for failing to preserve relevant text messages.[4] (ECF No. 233 at PageID 3551.) OJC sent a litigation hold on December 19, 2022, demanding that HYC and 562 preserve any physical or electronic documentation relevant to its forthcoming

---

[4]HYC and 562 do not argue that a motion in limine is an improper means of seeking a spoliation sanction. Thus, the court will address the merits of the motion.

litigation, including "correspondence . . . voicemails, text messages, [and] instant messages[.]" (ECF No. 1-11 at PageID 74.) During a deposition of former 562 employee Dayana Diaz, Diaz testified that she communicated with 562 drivers via text message concerning pick-up of nine shipping containers owned by OJC.[5] (ECF No. 233-4 at PageID 3601-03.) At issue in this litigation is whether 562, acting at the direction of HYC, committed conversion when it transported these containers to 562's own shipyard, where they remain today. Diaz also testified that the text messages at issue were sent from her personal cell phone and subsequently destroyed by an automatic one-year deletion setting on her iPhone after this litigation ensued. (Id.) She admitted that neither counsel for, nor any other employee of, HYC or 562 had instructed her to preserve the text messages before their deletion. (Id.) Based on Diaz's testimony, defendants claim that HYC and 562 engaged in spoliation by failing to preserve Diaz's text messages. (ECF No. 233 at PageID 3549-50.) They seek an adverse inference instruction "that 562 knew that it was willfully acting against OJC's wishes and instructions when 562 picked up OJC's nine containers and delivered them to 562'[s] yard, not OJC's warehouse." (Id. at PageID 3551.)

---

[5]Diaz was added as a counter-defendant on September 9, 2023, but was later dismissed by the court on August 5, 2024. (ECF Nos. 49, 226).

Although HYC and 562 do not deny that Diaz's text messages were destroyed after this litigation began, they argue that sanctions are nonetheless inappropriate given HYC and 562's adoption of the underlying facts. (ECF No. 236 at PageID 3655-56.) HYC and 562 point to deposition testimony of Silver and Antonio Hernandez confirming that HYC did direct 562 to reroute OJC's nine shipping containers. (Id. at PageID 3656.) Given this uncontested fact, HYC claims there is "no dispute" about the directions given to 562's truckers and thus "no probative value" to the destroyed text messages. (Id.) As such, defendants have failed to show how HYC and 562's conduct was "so prejudicial that it substantially denied defendants' ability to defend the case." McCarty v. Covol Fuels No. 2, LLC, 644 F. App'x 372, 380 (6th Cir. 2016). Rather, the pertinent dispute is whether HYC had a right to redirect the containers because of OJC's alleged failure to pay.

Courts are afforded "broad discretion" in deciding whether and how to impose sanctions for evidence spoliation. Adkins v. Wolever, 554 F.3d 650, 654 (6th Cir. 2009) (en banc). "Spoliation is 'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" Capital Senior Living, Inc. v. Barnhiser, No. 3:22-CV-00606, 2024 WL 278105, at *3 (N.D. Ohio Jan. 25, 2024) (quoting Nationwide Mut. Fire Ins. Co. v. Ford Motor Co., 174 F.3d 801, 804 (6th Cir. 1999)). A court may impose a range of spoliation sanctions

- 15 -

depending on the circumstances, "including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." Adkins, 554 F.3d at 654. "The severity of sanctions issued is determined on a case-by-case basis, depending in part on the spoliating party's level of culpability." Barnhiser, 2024 WL 278105, at *3 (quoting Flagg v. City of Detroit, 715 F.3d 165, 178 (6th Cir. 2013)).

A party seeking sanctions for evidence spoliation under Federal Rule of Civil Procedure 37 must establish the following: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party destroyed the evidence with a culpable state of mind; and (3) the destroyed evidence was relevant to the opposing party's claim or defense." Ecolab Inc. v. Ridley, No. 1:22-cv-50, 2023 WL 11762828, at *10 (E.D. Tenn. Aug. 1, 2023)(quoting McCarty, 644 F. App'x at 378 and Byrd v. Alpha All. Corp., 518 F. App'x 380, 383–84 (6th Cir. 2013)).

"For purposes of spoliation motions, courts deem evidence to be 'under a party's control when that party has the right, authority, or practical ability to obtain the [evidence][.]" Barnhiser, 2024 WL 278105, at *3 (quoting Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 515 (D. Md. 2009)). "A party to civil litigation has a 'duty to preserve relevant information . . . when that party has notice that the evidence is

- 16 -

relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp., No. 3:16-CV-00024-CHB, 2022 WL 3094320, at *5 (W.D. Ky. July 18, 2022) (quoting John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008) (internal quotation marks omitted)). "To prove culpability, the party claiming spoliation must show 'the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" Id. (quoting Beaven v. U.S. Dep't of Just., 622 F.3d 540, 554 (6th Cir. 2010)). "In determining whether a party should have known that evidence may be relevant to future litigation, courts apply an objective, not subjective, standard." Ecolab Inc., 2023 WL 11762828, at *10 (citing Byrd, 518 F. App'x at 384). "Because the intentional or negligent destruction of relevant evidence necessarily hinders the jury's ability to decide a case based on a full understanding of the facts, a proper spoliation sanction 'will serve both fairness and punitive functions' by 'leveling the evidentiary playing field' and deterring other litigants from engaging in similar conduct." Tolson v. Washburn, No. 3:19-cv-00175, 2022 WL 1479942, at *5 (M.D. Tenn. May 10, 2022) (quoting Adkins, 554 F.3d at 652).

Here, the court finds that HYC and 562 spoliated evidence by failing to notify Diaz of the preservation letter, which resulted in Diaz negligently auto-deleting her text messages. See

- 17 -

Barnhiser, 2024 WL 278105, at *5 (noting that spoliation can occur if a party acted "negligently" when destroying relevant evidence). Diaz confirmed in her July 17, 2024 deposition that she primarily communicated about container pick-up and delivery with 562 drivers via text message, and that any messages Diaz sent or received during HYC and OJC's business relationship were deleted after a litigation hold was in place. (ECF No. 233-4 at PageID 3600-02.) In their response, HYC and 562 also do not dispute that they owed a duty to preserve the text messages and that Diaz was within the category of employees covered by the litigation hold.

Nevertheless, the facts here do not support that HYC and 562's conduct rose to the level of culpability justifying an adverse inference sanction. Under Rule 37, the court may instruct the jury that it can presume as unfavorable to a party information lost because that party failed to take reasonable steps to preserve it. Fed. R. Civ. P. 37(e)(2). However, this adverse inference instruction is appropriate "only upon finding that the party acted with the *intent to deprive* another party of the information's use in the litigation." Id. (emphasis added). Here, Diaz's deposition testimony, which defendants rely on as their sole evidence of HYC and 562's "culpable state of mind," Phoenix Process, 2022 WL 3094320, at *5, at best supports a finding of negligent conduct and not an intent to deprive:

Q And do you still have the same phone that you use while you were working with 562 today?

A Yes. I still have the same phone number, not the same phone.

Q So, you changed the phone?

A Yes.

Q What phone d[id] you have back then?

A I had an iPhone, I think 12 Pro Max at the time.

Q And what phone do you have now?

A An iPhone 15 Pro Max.

Q So, when you transfer -- is that -- was that the only transfer you did, like, with your phone?

A Yes.

Q Now, when you transferred that iPhone, did it transfer also all of the old text messages and –

A No. So, for my iPhone, I have the feature where it deletes messages after one year, which is safe storage.

Q So, now, all of your messages are deleted?

A Yes.

Q And that happened a year after –

A Yes.

Q -- after the -- after those messages were sent, correct?

A Correct.

Q Did you ever receive, you know, like, any message or any letter, any other communication from anybody telling you, "Hey, a lawsuit was filed. Don't delete anything?"

A No.

Q Nobody ever told you that?

A No.

Q Okay. Is it fair to say that those messages were deleted after the lawsuit was filed?

A I think so, yes.

(ECF No. 233-4 at PageID 3601-02.) The court therefore does not find that an adverse inference sanction is warranted under the circumstances.

For this reason, defendants' fifth motion in limine is DENIED.

### F.   Motion #6 to Exclude Evidence of "Pass Through" Payments Not Already Disclosed by HYC and 562

Defendants lastly seek to exclude any underlying documentation or testimony alleging that HYC and 562 made "pass through" payments for which OJC would be liable. (ECF No. 233 at PageID 3553.) The contract between HYC and OJC specified that certain "custom duties, transportation charges, and related payments advanced by [HYC]" during transportation of the latter's containers would be treated as "pass through payments" for which HYC could charge OJC. (Id. at PageID 3552.) Defendants have repeatedly alleged that they requested underlying documentation "for numerous improper charges" listed on HYC's invoices to OJC, but HYC and 562 to date have produced only "minimal" documentation of certain waived per diem charges. (Id.) In support of their motion, defendants posit that the court, under Federal Rule of Civil Procedure 37(c)(1), may "proactively limit" the evidence a

- 20 -

party may use at trial because of that party's failure to fulfill its discovery obligations. (Id. at PageID 3553) (citing Ross v. Am. Red Cross, 2012 WL 2004810, at *7).

Rather than addressing whether they possess additional documentation not already disclosed to defendants, HYC and 562 reassert that they are owed the contested per diem charges. (ECF No. 236 at PageID 3558-59.) HYC and 562 explain that the "per diem" rates are the sole "pass through" payments in contention and appear to suggest that they have already provided documentation of these charges during discovery. (Id.)

Under Rule 37, a party who "fails to provide information . . . as required by Rule 26(a) or (e)" is prohibited from using that information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to this sanction, Rule 37 grants the court discretion to order payment of expenses, inform the jury of the party's failure, and impose any other "appropriate sanctions." Id.

Here, the parties acknowledge that HYC has provided some documentation of the per diem rates charged in its invoices to OJC. In fact, by order dated February 29, 2024, the undersigned previously ordered HYC to produce all documents underlying the itemized charges in its invoices. (ECF No. 115 at PageID 1061.) In compliance with the February 29 order, counsel for HYC and 562

verified by notice dated March 12, 2024 that they served defendants "billing information related to the itemized charges appearing on HYC's invoices." (ECF No. 125 at PageID 1089.) "[T]o the extent that *additional* information regarding Plaintiff's alleged damages exists, and to the extent that such information was not produced or otherwise made known to [the defendants] during discovery (in depositions, for example), Plaintiff is precluded from introducing that information—through documentary evidence, witness testimony, or any other means—at trial." Ross, 2012 WL 2004810, at *8 (emphasis added). Defendants' sixth motion in limine is therefore GRANTED with respect to HYC and 562's introduction of or reliance on any documentation of "pass through" charges not already provided to defendants during discovery.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 17, 2024
Date