IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| HYC LOGISTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-02050-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| OJCOMMERCE, LLC, doing business as | ) | |
| OJ Commerce, LLC, and JACOB WEISS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS FOR ATTORNEYS' FEES

In December 2024, the Court held a jury trial in this case. (ECF Nos. 289, 294–97.) And the jury returned a verdict finding that Defendant OJCommerce, LLC ("OJC") breached its contract with Plaintiff HYC Logistics, Inc. ("HYC") and that, in response to the breach, HYC properly exercised its contractual lien right. (ECF No. 302.) But the jury also found that HYC engaged in misrepresentation and deceived port authorities in Los Angeles, California, violating the Tennessee Consumer Protection Act ("TCPA"). (*Id.*) The Parties then filed post-trial motions (ECF Nos. 303, 304, 310), and the Court vacated the TCPA award (ECF No. 342). The Parties now move for attorneys' fees. (ECF Nos. 349, 351.) For the reasons explained below, the Court **DENIES** OJC's Motion and **GRANTS IN PART** HYC's Motion.

## BACKGROUND[1]

HYC provides logistics services to international and domestic companies. And in 2022,

---

[1] See Order Denying Summary Judgment (ECF No. 259) and Order on Post-Trial Motions (ECF No. 342) for a more detailed background.

OJC hired HYC to coordinate shipping and transportation for its goods.  Relying on the trucking company 562 Express, HYC fulfilled the transportation requests for many of OJC's shipments.  But OJC disputed certain charges and fees instead of timely paying all its invoices.  In response to this nonpayment, HYC exercised its contractual lien right and had 562 Express pick up and hold nine containers that were shipped to the Los Angeles Port for OJC.

HYC then sued OJC here, seeking a declaratory judgment confirming its right to enforce its contractual lien and to sell the contents of the nine containers to offset OJC's debt.  (ECF No. 1.)  HYC also alleged breach of contract against OJC to recover expenses and damages for the services it provided.  (*Id.*)  And, relevant to these motions, OJC counterclaimed and asserted fraud, misrepresentation, and TCPA violations.  (ECF No. 49.)  At the end of the trial, the jury returned a verdict for HYC on the contract and lien claims.  (ECF No. 302.)  And it found for OJC on its misrepresentation and TCPA claims.  (*Id.*)  But the Court then vacated the TCPA award in its ruling on the Parties' renewed motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  (ECF No. 342.)  The Parties now move for attorneys' fees.  (ECF Nos. 349, 351.)

## LEGAL STANDARD

When a federal court exercises its diversity jurisdiction over a case, state law governs an attorneys' fee award.  *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 836–37 (6th Cir. 2023) (citation omitted).  So Tennessee law applies here.  And Tennessee courts follow the "American Rule" when addressing attorneys' fees.  *See Colley v. Colley*, 715 S.W.3d 293, 302 (Tenn. 2025); *see also Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011).  Under that rule, parties in civil cases typically pay their own attorneys' fees unless "(1) a contractual or statutory provision creates a right to recover attorney's fees; or (2)

2

some other recognized exception to the American Rule applies." *Colley*, 715 S.W.3d at 302
(citation omitted). The party seeking attorneys' fees "bears the burden of showing [that] an
exception to the American Rule" applies. *Id.* at 303 (citation omitted). With that said, the
United States Supreme Court has noted that "[a] request for attorney's fees should not result in a
second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court addresses
OJC's Motion before turning to HYC's Motion.

## OJC'S MOTION FOR ATTORNEYS' FEES

OJC moves for $616,089.50 in attorneys' fees. (ECF No. 349.) This Court can grant
OJC's request only if those fees are authorized by statute or contract, or if another exception to
the American Rule applies. *See Colley*, 715 S.W.3d at 302. OJC does not argue—for good
reason—that either of the first two categories apply. (*See* ECF No. 349 at PageID 5876–80).
There is no statute allowing attorneys' fees in fraud cases, and OJC did not prevail on any
contract claim.[2] And OJC does not claim it falls into any of Tennessee's traditionally recognized
exceptions to the American Rule. *See, e.g.*, *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d
336, 338–39 (Tenn. 1985) (creating narrow exceptions to include "implied indemnity
agreement[s]" and the "tort of deceit"); *House v. Est. of Edmondson*, 245 S.W.3d 372, 377
(Tenn. 2008) (recognizing the "common fund doctrine" as another exception).

Rather, OJC argues that "Tennessee law unequivocally entitles an award of attorneys'
fees to a prevailing party on a fraud claim, recognizing the unfair burden on victims forced to
bear litigation costs to undo deliberate wrongdoing." (ECF No. 349 at PageID 5865.) And it
relies on four cases to support its position that its "entitlement to attorneys' fees is

---

[2] Even if it did prevail on a contract claim, OJC has not argued that a contract entitles it to
attorneys' fees.

incontrovertible" because it "prevailed on the core fraud claims." (*Id.* at PageID 5876–77.) *See In re Schmank*, 535 B.R. 243, 267 (Bankr. E.D. Tenn. 2015) ("[U]nder Tennessee law related to damages arising from misrepresentation, the Plaintiffs are entitled to attorney fees."); *Ellis v. Duggan*, 644 S.W.3d 85, 127 (Tenn. Ct. App. 2021) ("We noted that awards of attorney fees have been upheld based on findings of fraud[.]"); *Francis v. Barnes*, No. W2012-02316-COA-R3-CV, 2013 WL 5372851, at *11 (Tenn. Ct. App. Sept. 23, 2013) ("Here, the trial court's award of attorney's fees to Mrs. Francis is authorized as a recoverable pecuniary loss resulting from the Barneses' intentional misrepresentations."); *Lewis v. Lewis*, No. E2014-00105-COA-R3-CV, 2015 WL 1894267, at *12 (Tenn. Ct. App. Apr. 27, 2015) ("We have upheld an award of attorney's fees based on a finding of intentional misrepresentation.").

The Court finds that OJC is mistaken. As HYC correctly points out, three of the cases OJC cites address defendants who, used a confidential relationship to defraud individuals of diminished mental capacity. *Ellis*, 644 S.W.3d at 128–29 (quoting *Martin v. Moore*, 109 S.W.3d 305, 313 (Tenn. Ct. App. 2003) ("[T]he imposition of [attorney] fees on fiduciaries who deliberately use their position of trust to enrich themselves creates a disincentive to such behavior.")); *Francis*, 2013 WL 5372851, at *11 (awarding attorneys' fees for intentional misrepresentation claim where a decedent's grandsons exercised undue influence over her to obtain her property deed); *Lewis*, 2015 WL 1894267, at *14 ("Under *Martin* and the cases cited therein, the trial court was supported in awarding attorney's fees against Sam Lewis on the ground of his abuse of his fiduciary duty by deliberately using his position of trust to enrich himself at the expense of his ward, Dorothy Lewis."). And in the other case, a bankruptcy court applying Tennessee law awarded attorneys' fees for a "breach of fiduciary duty by misrepresentation." *In re Schmank*, 535 B.R. at 267 (citing *Martin*, 109 S.W.3d at 313).

4

But the commercial transaction here does not share the lack-of-capacity concerns present in the three Tennessee appellate cases OJC cited. And the bankruptcy case is also distinguishable—there is no breach-of-fiduciary-duty present here. Even if the Court were persuaded by that case, a federal bankruptcy court opinion hardly establishes that OJC is entitled to attorneys' fees under Tennessee jurisprudence. OJC relatedly argues that it deserves attorneys' fees because "it obtained excellent results." (ECF No. 349 at PageID 5879.) But OJC did not cite—and the Court cannot find—any persuasive case that would entitle it to attorney fees under Tennessee's narrow exception to the American Rule.

That said, OJC devotes several pages to claims that are briefly worth addressing. First, OJC insists on rewriting the facts here and the Court's earlier orders. It argues that the jury found in its favor on "factually identical" fraud and TCPA claims. (ECF No. 349 at PageID 5871; *Id.* at PageID 5875.) Yet this conflicts with the jury's verdict and with OJC's own earlier position. (ECF No. 342 at PageID 5854 n.26.) Second, it claims—and attempts to relitigate— that the jury found fraud at the Port. (ECF No. 349 at PageID 5875–76.) But as the Court explained in its Order on Post-Trial Motions, no evidence supports this finding.[3] (ECF No. 342 at PageID 5846–80.) And OJC similarly rehashes the issue of per diems, their validity, and the jury's supposed finding on them. (ECF No. 349 at PageID 5873–74, 5879.) The Court reiterates, however, that it does not know whether the jury subtracted fees for the per diems. And in any event, the jury had a right to find that not all per diems were improper at the time of billing. (*See* ECF No. 342 at PageID 5825–27.)

---

[3] OJC relies on statements from HYC at the early stages of this litigation to challenge this result. The Court does not consider those statements because they were neither evidence at trial nor part of its post-trial briefing.

For these reasons, OJC has not met its burden to show that an exception to the American Rule applies here.  The Court therefore **DENIES** OJC's Motion.

<u>**HYC'S MOTION FOR ATTORNEYS' FEES**</u>

HYC, together with 562 Express,[4] move for $617,845.22 in attorneys' fees and costs plus post-judgment interest.  (ECF No. 351.)  They do so based on Tennessee's contract exception to the American Rule, which applies "only when a contract *specifically* or *expressly* provides for the recovery of attorney fees."  *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 705 (Tenn. 2019) (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009)).  "The party seeking payment of their attorney fees bears the burden of showing an exception to the American Rule."  *Colley*, 715 S.W.3d at 303.  And if a party meets that burden, "the trial court does not have discretion to set aside the parties' agreement."  *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017) (citation omitted).  Instead, "[t]he sole discretionary judgment that the trial court may make is to determine the amount of attorney's fees that is reasonable within the circumstances."  *Id.* (citation omitted).  The Court now addresses whether the contract between HYC and OJC entitles HYC to its attorneys' fees.

I.      **The Contract**

HYC moves for attorneys' fees based on the National Customs Brokers & Forwarders Association of America Terms & Conditions of Service ("Contract") agreement it had with OJC. (ECF No. 351-1 at PageID 5989–90; ECF No. 1-2 at PageID 35.)  The Contract addresses what happens if HYC has to sue to collection the amounts OJC owes:

---

[4] HYC's attorneys also represented 562 Express throughout this litigation.  (ECF No. 351-2 at PageID 6004.)

> Costs of Collection.  In any dispute involving monies owed to Company,[5] the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest as 5.0% per annum or the highest rate allowed by law, whichever is less unless a lower amount is agreed to by Company.

(ECF No. 1-2 at PageID 35.)  HYC believes this paragraph entitles it to attorneys' fees; OJC disagrees.

By its plain language, the Contract *expressly* provides for "reasonable attorney's fees." *Cf. Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 309 ("If a contract does not *specifically* or *expressly* provide for attorney fees, the recovery of fees is not authorized.") (emphasis in original).  Because of that provision, the question then becomes whether this dispute involves HYC's "costs of collection" relating its "monies owed."  *See Eberbach*, 535 S.W.3d at 474 (stating that a party seeking to enforce their contractual right to attorneys' fees must "demonstrate that the contract upon which their claims are based contains a provision entitling [it] to [] attorney's fees").

At its core, this case is about HYC collecting the money OJC owed it.  But OJC tries to distinguish this suit from the attorneys' fees permitted under the Contract because HYC moved here for declaratory judgment.  OJC argues that HYC did not sue "to collect money."  (ECF No. at PageID 6061.)  Rather, OJC contends that HYC only sought judicial approval of its decision to seize the containers.  (*Id.*)  This, according to OJC, means that HYC only sought "damages" rather than "sums due" under the Contract.  (*Id.* at PageID 6062–63 (citing *Charles v. McCrary*, No. E2023-00608-COA-R3-CV, 2024 WL 3518597, at *5 (Tenn. Ct. App. July 24, 2024)).

That is a distinction without difference.  Despite OJC's efforts to repaint HYC's claims here, this is a breach of contract case.  In its 30-page complaint, HYC asserted five causes of

---

[5] The Contract defines the "Company" as "HYC Logistics, Inc., its subsidiaries, related companies, agents and/or representatives."  (ECF No. 1-2 at PageID 33.)

action including breach of contract and sought declaratory relief and damages. (ECF No. 1 at

PageID 27–29.) As for its request for damages, HYC asked for "damages . . . including interest

on the unpaid principal as provided for in the Contract, storage and sale fees and expenses, and

attorney's fees and costs . . ."; "unpaid fees and expenses, storage fees, attorney's fees, costs, and

all other damages to which Plaintiff may prove it is entitled . . ."; "HYC is entitled to damages

from Defendants for the contractual debt owed plus other damages, including interest on the

unpaid principal as provided for in the service contract, storage and sale fees and expenses,

interest on the principal debt, attorney's fees and costs." (*Id.*) And the jury found that OJC

breached its contract with HYC by withholding payment of the amounts due. Still, OJC cites

*New Covenant Baptist Church v. Sark*, No. E2002-02693-COA-R3-CV, 2003 WL 21544248

(Tenn. Ct. App. July 8, 2003) and *Clark v. Rhea*, No. M2002-02717-COA-R3-CV, 2004 WL

63476 (Tenn. Ct. App. Jan. 13, 2004) in support.

    In *New Covenant Baptist Church*, the plaintiff sued for a declaration that a restrictive

covenant did not stop actions related to a proposed, unbuilt property. 2003 WL 21544248 at *1.

The defendants later moved for attorneys' fees under a provision in the restrictive covenant. *Id.*

The Tennessee Court of Appeals found that the covenant provided for fees only when a party

sought to enforce the covenant's "restrictions or for violation thereof." *Id.* Because no party

sued to enforce the covenant and the plaintiff only sought a declaration of its rights, the fee

provision did not apply. *Id.* And similarly in *Clark*, the plaintiff sought declaratory relief to

avoid a non-compete clause under a contract. 2004 WL 63476 at *3. But that contract permitted

attorneys' fees only when the prevailing party successfully prosecuted or defended against a

breach of contract. 2004 WL 63476 at *3. Because the plaintiff in C*lark* did not allege a breach

8

of contract or have to defend against such a claim, the *Clark* court founds that the attorneys' fees provision did not apply.  *Id.*

These cases do not show a per se Tennessee rule that precludes attorneys' fees under a contract just because the plaintiff includes a claim for declaratory relief.  *Cf. Brunsting v. Brown*, No. M2000-00888-COA-R3CV, 2001 WL 1168186, at *7 (Tenn. Ct. App. Oct. 4, 2001) (affirming attorneys' fee under a contract and noting that "declaratory and injunctive relief are primary methods to enforce a contracted provision").  They instead reinforce Tennessee's standard that a party is entitled to attorneys' fees only when provided for by a contract's express terms.

And here, unlike *New Covenant Baptist Church* and *Clark*, the Contract's terms apply. HYC sued for declaratory judgment and breach of contract as part of its collections activities. The declaratory judgment related to its desire to sell the containers it retrieved.  HYC did not know if the value of the contents of the containers would cover OJC's outstanding payments, so collecting for past due payments was not complete until it sold the contents and collected the rest.  Although HYC exercised its lien to take possession of the containers, as OJC emphasizes, it could not sell them to recover part of the unpaid balance without the risk of criminal prosecution. After all, OJC threatened to "file felony criminal charges with the proper state and federal authorities" (ECF No. 1-10 at PageID 60) for HYC's proper exercise of its lien over the containers (*see* ECF No. 302 at PageID 4245).  With OJC's threat of criminal action looming, HYC reasonably waited to sell the contents until it sued for permission to do so.  Because HYC sought to collect payment for  past due payments from OJC, under the "Costs of Collection"

provision of the Contract HYC is entitled to its attorneys' fees related to its "collection" of

"monies owed."[6]

## II.     HYC's Entitlement to Fees Under the Contract

Even still, OJC argues that the Contract covers none—or, at most—only some of HYC's

attorneys' fees.  (*See* ECF No. 353 at PageID 6068.)  So the Court next considers OJC's

arguments against awarding HYC certain fees under the Contract.

### A.     Litigation in the Southern District of Florida

OJC asserts that the Contract does not entitle HYC to the $6,578.50 in attorneys' fees

related to ancillary litigation in the Southern District of Florida.  (*Id.* at PageID 6069–70.)  OJC

explains that these charges relate to HYC subpoenaing Defendant Jacob Weiss's wife.  (*Id.*)

HYC and OJC argued litigated about the subpoena in Florida and that court ruled against HYC

and then required HYC to pay a third of Mrs. Weiss's attorneys' fees.  (*Id.*)  For this reason, the

---

[6] OJC offers two more arguments here.  It posits that unclean hands prohibits recovery for
attorneys' fees.  (ECF No. 353 at PageID 6058–60.)  But as explained in the Order on Post-Trial
Motions, the unclean hands "doctrine applies only to parties who seek an equitable remedy from
a court."  *In re Mattie L.*, 618 S.W.3d 335, 344–45 (Tenn. 2021).  And this lawsuit is for breach
of contract, and the relief HYC seeks is a contractual remedy.  (ECF No. 1-2 at PageID 35; Ex.
3.)  This is not an equitable claim.  Moreover, the doctrine of first breach, which prevents a party
from relying on and enforcing a contract that it breached first, would be more apt in a case like
this.  *See Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.*, 652 S.W.3d 802, 819 (Tenn.
Ct. App. 2021) (citation and quotation marks omitted) ("[A] party who commits the first uncured
material breach of contract may not recover damages for the other party's material breach.").
But because the jury found that HYC did not breach the Contract first, this doctrine similarly
does not apply.  (ECF No. 302 at PageID 4245.)
    OJC also contends that HYC cannot recover attorneys' fees because it failed to mitigate
damages.  Whether HYC mitigated damages is something the jury considered when awarding its
verdict.  (ECF No. 299, Instruction No. 24.)  And even if they found a failure to mitigate, which
is unclear from the jury verdict, it is unclear why that failure would preclude recovering
attorneys' fees.  What is more, OJC cite no law explaining its position.  At any rate, mitigating
damages could minimize related attorneys' fees, but that consideration relates more to whether
the amount of fees requested is reasonable; it is not a total bar to recovery.

Court agrees with OJC and finds the side-show about Weiss's wife is not covered by the Contract here.

### B.    Jacob Weiss

HYC's lawsuit against OJC included claims against Weiss for fraud, fraudulent inducement, and misrepresentation.  (ECF No. 1 at PageID 23–26.)  OJC contends that HYC is not entitled to the $84,819.50 in fees related to its claims against Defendant Weiss.  (ECF No. 353 at PageID 6063–65.)  Again, the Court agrees.  HYC's claims against Weiss were for fraud, misrepresentation, and fraudulent inducement.  (ECF No. 1 at PageID 23–26.)  Even though those causes of action relate to this contract dispute, the claims against Weiss move well past HYC's collection costs.  The Court accordingly finds that HYC may not recover attorney fees for those claims.

### C.    Counterclaims, 562 Express, and Individual Defendants

OJC brought counterclaims against both HYC, 562 Express, as well as Individual Counter Defendants Uri Silver, Itamar Aronov, Dayana Diaz, and Antonio Hernandez.[7]  OJC contends that HYC cannot collect its attorneys' fees that relate to those counterclaims because they "fall outside the contract's limited fee-shifting provision, which applies solely to fees incurred in collecting 'monies owed.'"  (ECF No. 353 at PageID 6066.)  The thrust of their argument hinges on their contention that courts generally decline to award fees for defending counterclaims.  But that proposition is a stretch here.  Courts permit parties to recover attorneys' fees for defending counterclaims if those counterclaims are contemplated by the contract's terms. *See, e.g.*, *see Charles*, 2024 WL 3518597 at *6; *Brunsting*, 2001 WL 1168186, at *7.

---

[7] Silver and Aronov are HYC's employees; Diaz and Hernandez are 562 Express's employees. (ECF No. 49 at PageID 327–28.)

Although the Contract does not specifically mention counterclaims, the Court finds that the term "any dispute" reaches counterclaims so long as HYC's defense against those counterclaims relates to its collections activities. *See Charles*, 2024 WL 3518597 at *6 (finding a contract's attorneys' fee provision entitled plaintiffs "to an award of those attorney's fees that are attributable to their defense of Defendants' counterclaim"). On the one hand, HYC primarily sought to recover under the Contract, and OJC brought claims arising in tort, which appear to be distinct issues. But on the other hand, OJC argued that HYC's fraudulent conduct breached the Contract, which would prevent HYC from recovering anything. So for HYC to collect on its Contract claims, it had to defend OJC's claims that HYC and its agents committed the first breach of contract through their fraudulent conduct. *See Parker v. Brunswick Forest Homeowners Ass'n, Inc.*, No. W2018-01760-COA-R3-CV, 2019 WL 2482351, at *11 (Tenn. Ct. App. June 13, 2019) (applying similar reasoning). For that reason, HYC may recover its attorneys' fees related to defending itself and its agents against OJC's counterclaims.

The same is true for HYC defending OJC's claims against 562 Express and the Individual Counter Defendants. The Contract authorizes attorneys' fees for collection costs the "Company" incurred. And the Contract defines "Company" as "HYC Logistics, Inc., its subsidiaries, related companies, agents and/or representatives." (ECF No. 1-2 at PageID 33.) So HYC's employees, Silver and Aronov, are its agents under the Contract. And as OJC has tirelessly argued, 562 Express acted as HYC's agent. It follows then that 562 Express's employees, Diaz and Hernanez, are also HYC's agents. Because of that, HYC may recover the attorneys' fees it incurred defending these parties, so long as its litigation efforts relate to HYC's collection costs.

And they do. 562 Express's defense of the counterclaims here are intertwined with HYC's collections costs under the Contract. Those efforts began before HYC filed this lawsuit.

12

After 562 Express took possession of OJC's containers, OJC sued it in the United States District Court for the Central District of California.[8]  (ECF No. 259 at PageID 3792 n.4.)  That court transferred the case to this Court based on the Contract's forum selection clause, and this Court consolidated the two cases.  (*Id.*)  HYC's attorneys' fees—in California and in this lawsuit— relate to its collections cost for the same reasons the counterclaims do—562 Express's alleged conduct in California would impact HYC's ability to collect on its contract claim here.

The same reasoning applies to Silver, Aronov, Diaz, and Hernandez.  OJC asserted claims against these individuals to try to rebut HYC's contract claims.  To prevail on its claims under the Contract, HYC had to defend the actions of these agents against OJC's claims. Because it expressly refers to "any dispute," the Court finds that the Contract entitles HYC to recover its attorneys' fees related to OJC's claims against these parties.

## III.    Reasonableness

Because the Contract entitles HYC to its attorneys' fees, the Court now considers whether those fees are reasonable.  *See Eberbach*, 535 S.W.3d at 478.  The Tennessee Supreme Court has offered "appropriate factors to be used as guides in fixing a reasonable attorney's fee." *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980).  Those factors are:

(1) The time devoted to performing the legal service.
(2) The time limitations imposed by the circumstances.
(3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
(4) The fee customarily charged in the locality for similar legal services.
(5) The amount involved and the results obtained.
(6) The experience, reputation, and ability of the lawyer performing the legal service.

---

[8] Although HYC was not a named party in the California litigation, its attorneys represented 562 Express.  (ECF No. 351-2 at PageID 6004–05.)

*Id.*  Courts also consider the similar factors listed in Tennessee Supreme Court Rule 8, Rule of

Professional Conduct ("RPC") 1.5(a) when determining reasonableness.  *See Wright v. Wright*,

337 S.W.3d 166, 176–77 (Tenn. 2011); *Hometown Folks, LLC*, 643 F.3d at 535.  Those factors

are:

> (1) the time and labor required, the novelty and difficulty of the questions
>     involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular
>     employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the
>     services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the
>     lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. R. Sup. Ct. 8, RPC 1.5(a).

But the factors in *Connors* and RPC 1.5(a) are only guidelines.  *See Eberbach*, 535

S.W.3d at 479 ("While we hold that our courts do not have discretion to deny an award of fees

mandated by a valid and enforceable agreement between the parties, nothing in this decision

affects or limits the discretion our courts have in determining the reasonableness and appropriate

amount of such awards pursuant to the factors set out in *Connors* and Tennessee Supreme Court

Rule 8").  Each factor may not be relevant to the individualized facts of every case.  Tenn. Sup.

Ct. R. 8, RPC 1.5, cmt. 1; *Hometown Folks, LLC*, 643 F.3d at 535 ("Depending on the case,

certain *Connors* factors may be more relevant than others.").  And Tennessee courts—unlike

federal courts—do not use the lodestar method to determine whether a proposed attorneys' fee is

reasonable.  *Wright*, 337 S.W.3d at 179–80 (citing *United Med. Corp. of Tennessee v.*

*Hohenwald Bank & Tr. Co.*, 703 S.W.2d 133, 137 (Tenn. 1986).  Further, "Tennessee has 'no

fixed mathematical rule' for determining what a reasonable fee is." *Wright*, 337 S.W.3d at 176
(citation omitted).

A.    **HYC's Proposed Fees**

Glankler Brown, PLLC, a law firm based in Memphis, Tennessee, represented HYC and
562 Express. (ECF No. 351-2 at PageID 6003.) Member S. Joshua Kahane acted as the lead
attorney. (*Id.* at PageID 6005.) Four other Glankler Brown attorneys and one paralegal also
worked on this case. (*Id.* at PageID 6006.) And the firm hired Jacob Segura, a California
attorney, to serve as local counsel and defend 562 Express against OJC's California lawsuit. (*Id.*
at PageID 6005.)

Glankler Brown billed HYC for 1,495.40 hours of work during this litigation. (*Id.* at
PageID 6007.) HYC proposes the following hourly rates for their work:

> Member S. Joshua Kahane—$495.00 through December 31, 2024, then $595.00
> Attorney Aubrey B. Greer—$385.00 through December 31, 2024, then $395.00
> Attorney Yosef Horowitz—$350.00 through December 31, 2024, then $395.00
> Attorney Morgan D. Murphy—$300.00
> Attorney M. Greer Bryant—$290.00
> Attorney Jacob Segura—$500.00
> Paralegal Mandi Benson—$260.00

(*Id.* at PageID 6006.) This all comes to $605.244.50 in proposed fees. (*Id.*)

HYC offered Mr. Kahane's Declaration to support its proposed fees. (*Id.*) The Court is
familiar with Mr. Kahane. He has been licensed to practice law in Tennessee since 2004. (*Id.* at
PageID 6003.) And his practice area centers around commercial litigation, business disputes,
and general civil matters. (*Id.*) HYC also supports it proposed fees with a second Declaration
from John S. Golwen. (ECF No. 351-4.) The Court is also familiar with Mr. Golwen. He is a
Member at Bass Berry & Sims PLC and has practiced law in Tennessee since 1990. (*Id.* at
PageID 6047.) Both lawyers conclude that HYC's proposed rates track the Memphis, Tennessee

15

market.  (ECF Nos. 351-2, 351-4.)  And both lawyers conclude that the proposed hours were reasonable and necessary in the context of this litigation.  (ECF Nos. 351-2, 351-4.)  Further, in HYC's brief, it explains that Mr. Segura was admitted to the California Bar in 1980 and cites to several California cases to support a rate of $500.00 per hour in that state.  (ECF No. 351-1 at PageID 5993 n.3.)

  **B.  Whether HYC's Proposed Fees are Reasonable**

  To be clear, the Court is not considering whether HYC's proposed $605,244.50 fee is reasonable.  That total has dropped.  After removing $6,578.50 in fees incurred during the Florida litigation and $84,819.50 in fees related to the claims against Weiss, HYC's proposed fees come to $513,846.50.  Using that number, the Court now uses its discretion to determine whether HYC's proposed fees are reasonable.  These factors relate to that analysis: the time, labor, and skill required by HYC's attorneys to properly litigate this matter; the customary fee in Memphis and California for similar legal services; the amount involved, and results obtained by HYC's attorneys; and the experience, reputation, and ability of HYC's attorneys.  *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1), (3), (4), (7); *see also Connors*, 594 S.W.2d at 676 (listing similar factors).

  OJC's brief in opposition does not address these factors.  But even if it did, it would not have much ground to stand on considering its own $616.089.50 attorneys' fee request.  (*See* ECF No. 349 at PageID 5881.)  Compare that number to the $605,244.50 requested by HYC.  (ECF No. 351-1 at PageID 5997.)  Considering how close these amounts are, the Court struggles to understand OJC's claims that HYC's request is unreasonable, when OJC requested an even greater amount and argues that its fees are reasonable.  OJC cannot have its cake and eat it too.

With that in mind, and as explained below, Tennessee's applicable factors suggest that HYC's fees are reasonable.

Turn first to time, labor, and skill. Tenn. R. Sup. Ct. 1.5(a)(1). The Court is familiar with HYC's attorneys' efforts in case. It ruled on several discovery disputes and a wide-ranging motion practice, parsed through the many counterclaims, and presided over a five-day jury trial. The Court observed HYC's attorneys pursue its claims against OJC. And it observed OJC's attorneys' work to pursue its position. All this litigation required considerable time, labor, and skill. No doubt this factor favors HYC's attorneys' fee request.

Move next to customary fees. Tenn. R. Sup. Ct. 1.5(a)(3). The Court first considers attorneys Kahane, Horowitz, Greer, and Segura. The Court observed Kahane, Greer and Horowitz at trial and at the many conferences and motion arguments. As explained, HYC adequately detailed Kahane's background and experience. (ECF No. 351-2.) Given this Court's knowledge of the local legal market, it agrees that his $495.00 hourly rate is customary and reasonable.[9] Horowitz is of counsel at Glankler Brown with nearly twenty years of litigation experience (ECF No. 351-1 at PageID 5995)—so his hourly rate of $350.00 is also customary and reasonable. As for Greer, HYC explains that he is a Member at the firm with about a decade of experience. (*Id.* at PageID 5994–95.) The proposed rate $385.00 rate for him is also customary and reasonable. *Cf. Touchmark Nat'l Bank v. Moore*, No. 19-2354, 2021 WL 2673703, at *3 (W.D. Tenn. June 10, 2021), *report and recommendation adopted sub nom. Touchmark Nat'l Bank v. Escue*, 2021 WL 2667516 (W.D. Tenn. June 29, 2021) (awarding similar amounts). Finally, given the California market and Segura's experience, the Court

---

[9] As OJC points out, HYC does not explain why his rate increased by $100.00 per hour in 2025. And the Court finds no compelling reason to award that increase.

likewise finds that his $500.00 rate is reasonable.  *Cf. Common Cause v. Jones*, 235 F. Supp.

1076, 1081 (C.D. Cal. 2002) (finding similar rates reasonable).

That said, the Court has reservations about the two other attorneys and paralegal for HYC

here.  HYC provides little to no information about attorneys Murphy and Bryant.[10]  Nor does it

provide information about paralegal Benson.  Instead, its attorney Declarations only attest that

their proposed fees are reasonable.  So the Court compares HYC's proposed rates for those

against OJC's attorneys' rates.  The hourly rate for OJC's attorneys at Glassman, Wyatt, Tuttle,

and Cox, P.C. was $300.00–$450.00 an hour depending on experience.  (ECF No. 349-3 at

PageID 5945.)  But they only billed $85.00 an hour for their paralegal's work.  (*Id.*)  And the

hourly rate for OJC's attorneys at Burch, Porter & Johnson, P.L.L.C. was $395.00 an hour for its

partners and $265.00 an hour for its associates.  (ECF No. 349-2 at PageID 5925.)

Based on this record, the Court cannot conclude that Murphy's proposed $300.00 rate

and Bryant's $290.00 are reasonable under the circumstances.  It is more reasonable to set the

lowest associate rate on record—$265.00—as their market rate.  *Cf. Krueger v. Experian Info.

Sols., Inc.*, No. 19-10581, 2024 WL 497105, at *4 (E.D. Mich. Feb. 8, 2024) ("Given Plaintiff's

failure to provide adequate information about the paralegals who worked on this case, the Court

finds that Plaintiff should be awarded a rate that is toward the bottom of the scale in this

District.").  That leaves paralegal Benson.  HYC similarly provided no information about her

skill and experience.  Although the Court does not discount the critical role paralegal's hold in

---

[10] Perhaps Mr. Kahane intended to attach those attorneys' professional biographies in his
Declaration.  He states that "[p]rofessional biographies for each of these attorneys are attached
collectively Exhibit 1."  (ECF No. 351-2 at PageID 6005.)  But the Court cannot find that
attachment.

this profession, it finds that $260.00 an hour is unreasonable here.  The Court therefore aligns her fee with OJC's paralegal costs: $85.00 an hour.  *Cf. id.*

This finding folds into the experience, reputation, and ability factor.  Tenn. R. Sup. Ct. 1.5(a)(7).  Glankler Brown is a long-standing reputable law firm.  Besides the Courts lack of information surrounding Murphy and Bryant, the firm's attorneys have decades of experience.  And HYC needed that level of sophistication and experience to address this business dispute.  This factor therefore also favors HYC's request for these fees.

That leaves the amount involved and results obtained.  Tenn. R. Sup. Ct. 1.5(a)(4).  HYC received a successful result—the jury here found that OJC "committed the first uncured, unwaived material breach of contract" and owed HYC $587,641.04 in damages.  (ECF Nos. 302, 344.)  But the jury also found HYC "committed intentional and/or reckless misrepresentation," owing OJC $238,279.45 in damages.  (ECF Nos. 302, 344.)  The Court acknowledges that HYC's success is offset by the jury's finding against it.  But that alone does not cut against HYC's attorneys' fees being reasonable under Tennessee law.  *See Hometown Folks, LLC*, 643 F.3d at 535 (citing *Keith v. Howerton*, 165 S.W.3d 248, 252–53 (Tenn. Ct. App. 2004) ("Tennessee courts have rejected a methodology based solely on the ratio of the fees requested to the amounts eventually awarded to the plaintiff."); *see also Ferguson Harbour Inc. v. Flash Market, Inc.*, 124 S.W.3d 541, 552–53 (Tenn. Ct. App. 2003) ("In determining the amount of fees and expenses to award, the issue is not how the fees requested compare to the amounts eventually awarded to the plaintiffs; rather, the issue is how the requested fees and expense[s] measure up [under the relevant factors].").  This is one factor among many.  And given the other factors supporting reasonableness and the context of this litigation, this factor supports granting HYC's proposed attorneys' fees because it prevailed on its underlying claim.  *Cf. Raines Bros.*,

*Inc. v. Chitwood*, No. E2015-01430-COA-R3-CV, 2016 WL 3090902, at *7 (Tenn. Ct. App.

May 24, 2016) (affirming an award under a attorneys' fee provision for $217,211.89 when

underlying judgment in contract damages only amounted to $$66,762.71); *Hosier v. Crye-Leike*

*Commercial, Inc.*, No. M2000-01182-COA-R3CV, 2001 WL 799740, at *1, 9 (Tenn. Ct. App.

July 17, 2001) (affirming $15,944.00 attorneys' fee award underlying judgment totaled

$1,600.00).

###    C.    OJC's Remaining Objections and Calculating the Award

The Court finds that HYC's $513,846.50remaining attorneys' fees are reasonable under

Tennessee law.  Still, it considers OJC's remaining objections before calculating the award.[11]

These objections dispute Glankler Brown's billing practices, arguing that HYC has no right to

recover portions of its bill.  (ECF No. 353-3.)  They are:

> Objection to $8,774.30 in "invalid entries" such as "Blank Entry, Unrelated Case,
> Clerical, Silver Travel";
> Objection to $28,584.45 in "Block Billing and Lack of Details";
> Objection to $170,888.49 in bills that are "generic and encompass the litigation as
> a whole."

(*Id.*)  The difficulty for the Court with respect to these objections is that OJC cites no specific

line-item entries, nor does it explain how it came to these total amounts.  These blanket

assertions recall a phrase the Tennessee Court of Appeals has used before—judges "are not like

pigs, hunting for truffles that may be buried in the record."  *Barton v. Barton*, 696 S.W.3d 571,

594 (Tenn. Ct. App. 2024) (citations and internal quotation marks omitted).

With that said, OJC's point is well taken.  In cases involving multiple lawyers, wide-

ranging motion practice, and a feverish build up to trial, at times, lawyers duplicate their efforts

---

[11] The Court has already considered some of those objections, such as fees related to
counterclaims, the individual Defendants, 562 Express, the litigation in California and Florida,
and the claims against Weiss.

causing billing inefficiencies.  That situation happened here to an extent.  For example, on December 12, 2024, Kahane billed 4.10 hours for "Trial Prep."[12]  (ECF No. 351-3 at PageID 6037.)  But Kahane never described what exactly that preparation entailed.  And there are many similar entries.  This type of billing may work for some clients.  But in this context, it hinders the Court's ability to decide whether such entries are reasonable.

So given the Court's own experience and the record before it, the Court finds that a reduction from $513,846.50 to $450,000.00 is reasonable here.  *Cf. Wright*, 337 S.W.3d at 176 (stating that determining reasonable attorneys' fees is a discretionary process based on evidence and experience).  By arriving at this number, the Court considers the result achieved by HYC's attorneys, 562 Express's agency in defending counterclaims, this case's intensive discovery, the Parties pre- and post-trial motion practice, and the attorneys' efforts in litigating a five-day jury trial.  And the lowered amount also reflects a slight reduction to Glankler Brown's hourly rates, billing unrelated to HYC's "collection" of "monies owed," and any mistakes or inconsistencies reflected in billing.

## IV.    Remaining Matters

That leaves costs, expenses, and post-judgment interest.  For costs and fees, HYC seeks $15,600.72.  OJC objects to $3,463.40 in "Attorney Travel and Postage," $548.20 in "Inflated Service of Process Fees," and $2,500.00 in costs "related to the Affidavit of Bass Berry."  (ECF No. 353-3; ECF No. 353 at PageID 6069.)  The Court agrees and reduces costs accordingly.  But

---

[12] Kahane's billing procedure here is known as "block billing."  As a court in this district once stated, "[b]lock billing alone does not require the court to reduce a fee award, although the practice is generally discouraged."  *Benoit v. Titan Med. Mfg., LLC*, No. 19-2704, 2021 WL 4477084 (W.D. Tenn. Sept. 29, 2021) (citation omitted) (applying the lodestar method).  And Tennessee courts appear neutral on the matter.  See *Pepper & Bros. P.L.L.C. v. Jones*, No. M2013-01668-COA-R3CV, 2014 WL 1370356, at *3 (Tenn. Ct. App. Apr. 4, 2014) (noting that the panel had been unable to find Tennessee cases "discussing the practice of block billing").

other than that, the expenses include money spent on court fees and deposition transcripts.  (ECF
No. 351-3 at PageID 6043–45.)  Those remaining expenses are reasonable.  The Court therefore
awards HYC costs in the amount of $9,089.12.

As a final matter, HYC moves for post-judgment interest.  (ECF No. 351-1 at PageID
6000.)  OJC did not object to this.  Although Tennessee law has controlled until now, the Sixth
Circuit has made clear that federal law controls post-judgment interest in diversity cases.
*Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 410 (6th Cir. 2018).
And post-judgment interest begins to run "from the date of the entry of judgment."  *Caffey v.
Unum Life Ins. Co.*, 302 F.3d 576, 587 (6th Cir. 2002) (citation omitted).  HYC therefore has a
right to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity
Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the
calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Of course, until paid
in full, interest will continue to accrue, and OJC will be responsible for those sums.

## CONCLUSION

This winding case is close to its end.  And now Tennessee law and the Contract entitles
HYC its reasonable attorneys' fees.  The Court therefore **DENIES** OJC's Motion for Attorneys'
Fees (ECF No. 349) and **GRANTS IN PART** HYC's Motion for Attorneys' Fees (ECF No.
351).  The Court **ORDERS** OJC to pay $450,000.00 in attorneys' fees and $9,089.12 in costs,
plus post-judgment interest under 28 U.S.C. § 1961.

**SO ORDERED**, this 8th day of December 2025.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE